## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JEVIC HOLDING CORP., *et. al.*,<br><br>           Debtors. | Chapter 7<br><br>Case No. 08-11006 (BLS) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the bankruptcy estates of JEVIC HOLDING CORP., *et al.*,<br><br>           Plaintiff,<br>           v.<br><br>THE CIT GROUP/BUSINESS CREDIT, INC., in its capacity as Agent, and SUN CAPITAL PARTNERS IV, LP, SUN CAPITAL PARTNERS MANAGEMENT IV, LLC, and SUN CAPITAL PARTNERS, INC.,<br><br>           Defendants. | Adv. Pro. No. 08-51903 (BLS)<br><br><br><br><br><br>**Re: A.D.I. 121, 122, 125, 126, 127, 128, 136** |

**REPLY IN SUPPORT OF COMBINED RESPONSE OF SUN CAPITAL
TO MOTION TO SUBSTITUTE CHAPTER 7 TRUSTEE AS REAL PARTY
IN INTEREST AND MEMORANDUM OF LAW IN SUPPORT OF
SUN CAPITAL'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Curtis S. Miller (No. 4227)
Matthew O. Talmo (No. 6333)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
cmiller@mnat.com
mtalmo@mnat.com

**KIRKLAND & ELLIS LLP**
James P. Gillespie
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5190
Facsimile: (202) 389-5200
james.gillespie@kirkland.com

James A. Stempel
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2440
Facsimile: (312) 862-2000
jstempel@kirkland.com

*Counsel for Defendants Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc.*

Dated: May 28, 2020

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................... 2

    I.    THE TRUSTEE MAY NOT BE SUBSTITUTED FOR THE COMMITTEE TO PROSECUTE THIS CASE ....................................... 2

        A.    The Final DIP Order Bars the Trustee from Asserting the Claims in the Complaint. ............................................................. 2

        B.    The Debtors' Waivers in the Final DIP Order Apply to the Claims Against Sun Capital. ....................................................... 7

    II.    SUN CAPITAL IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON ALL COUNTS IN THE COMPLAINT ................. 9

        A.    The Claims for the Avoidance of Liens and Payments Fail as the Purported Transfers are Subject to the Safe-Harbor Provision of Section 546(e). ......................................................... 9

            1.    The Complaint Does Not Allege Causes of Action for Actual Fraudulent Transfers. ....................................... 9

            2.    Sun Capital May Assert that the Transfers Fall Within the Section 546(e) Safe Harbor Defense. ........................... 12

            3.    Section 546(e) is Applicable to Collapsed Transactions. ................................................................... 12

            4.    Each of the Transfers Fall Within the Section 546(e) Safe Harbor. ......................................................... 15

                i.    CIT, Sun Capital, and the Prepetition Lenders are Each Covered Entities Under Section 546(e) ......................................................... 15

                ii.    Each of the Alleged Transfers Sought to Be Avoided Were Made in Connection with a Securities Contract. .......................................... 17

        B.    Sun Capital is Entitled to Judgment on the Pleadings With Respect to the Equitable Subordination Claim. ........................ 19

**TABLE OF CONTENTS (Continued)**

Page

C.      The Trustee's Judicial Estoppel Argument is Meritless. ...........................19

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                    <u>Page(s)</u>

*Cleveland v. Policy Mgmt. Sys. Corp.*,
   526 U.S. 795 (1999)......................................................................................................20

*Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*,
   2020 WL 1509447 (Bankr. D. Del. Mar. 30, 2020)........................................................13, 15

*Hill v. Akamai Technologies (In re MS55, Inc.)*,
   477 F.3d 1131 (10th Cir. 2007) .......................................................................................5

*In re Appleseed's Intermediate Holdings, LLC*,
   470 B.R. 289 (D. Del. 2012)............................................................................................13

*In re ATS Prod. Corp.*,
   2003 WL 25947346 (Bankr. E.D. Pa. 2003)...................................................................7

*In re Constellation Enterprises LLC*,
   587 B.R. 275 (D. Del. 2018)............................................................................................7

*In re DVI, Inc.*,
   326 B.R. 301 (Bankr. D. Del. 2005) ...............................................................................20

*In re Frescati Shipping Co.*,
   886 F.3d 291 (3d Cir. 2018)............................................................................................9

*In re Harnischfeger Industries, Inc.*,
   293 B.R. 650 (Bankr. D. Del. 2003) ...............................................................................20

*In re Integrated Health Services, Inc.*,
   304 B.R. 101 (Bankr. D. Del. 2004) ...............................................................................20

*In re The IT Group, Inc.*,
   322 B.R. 729 (Bankr. D. Del. 2005) ...............................................................................20

*In re Mervyn's Hldg.'s, LLC*,
   426 B.R. 488 (Bankr. D. Del. 2010) ...............................................................................12, 13

*In re Millennium Lab Holdings II, LLC*,
   2019 WL 1005657 (Bankr. D. Del. 2019) .......................................................................10

*In re National Forge Co.*,
   344 B.R. 340 (Bankr. W.D. Pa. 2006) ............................................................................11

*In re Northwestern Corp.*,
   2006 WL 2849776 (D. Del. 2006) ..................................................................................6

**TABLE OF AUTHORITIES (Continued)**

Page(s)

*In re Physiotherapy Holdings, Inc.*,
   2016 WL 3611831 (Bankr. D. Del. 2016) ............................................................................11

*In re Rachles, Inc.*,
   131 B.R. 782 (Bankr. D.N.J. 1991) .................................................................................... 5-6

*In re Riazuddin*,
   366 B.R. 177 (Bankr. D. Del. 2007) ....................................................................................20

*In re Sterten*,
   546 F.3d 278 (3d. Cir. 2008)................................................................................................12

*In re World Health Alternatives, Inc.*,
   344 B.R. 291 (Bankr. D. Del. 2006) ......................................................................................6

*Liquidation Trust of Hechinger Inv. Co. of Delaware v. Fleet Retail Finance
   Group (In re Hechinger Inv. Co. of Delaware)*,
   274 B.R. 71 (D. Del. 2002)..................................................................................................16

*Merit Management Group, LP v. FTI Consulting, Inc.*,
   138 S. Ct. 883 (2018)...........................................................................................................13

*Montrose Medical Group Participating Savings Plan v. Bulger*,
   243 F.3d 773, 782 (3d Cir. 2001).........................................................................................20

*Nix v. United States*,
   2018 WL 8244925 (E.D. Tex. 2018) ....................................................................................16

*Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
   773 F.3d 411 (2d Cir. 2014).................................................................................................18

*Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*,
   81 F.3d 355 (3d Cir.1996)....................................................................................................21

*Saks v. Franklin Covey Co.*,
   316 F.3d 337 (2d Cir.2003)..................................................................................................12

*Salzman v. Holiday Inns, Inc.*,
   48 A.D.2d 258 (N.Y. Sup. Ct. 1975) ......................................................................................8

Statutes and Other Authorities

11 U.S.C. § 101(22) ....................................................................................................................15

11 U.S.C. § 101(22A) ..................................................................................................................16

## TABLE OF AUTHORITIES (Continued)

Page(s)

11 U.S.C. § 544(b) ...................................................................................................11

11 U.S.C. § 546(e) .............................................................................................. *passim*

11 U.S.C. § 548 .......................................................................................................10

11 U.S.C. § 548(a)(1)(A) .........................................................................................10

11 U.S.C. § 548(a)(1)(B) .........................................................................................10

11 U.S.C. § 741(7) ...................................................................................................18

11 U.S.C. § 1304(a) .............................................................................................10, 11

23 N.Y. Jur. 2d Contribution, Etc. § 180 ..................................................................9

Fed. R. Bankr. P. 7009 ............................................................................................10

Fed. R. Bankr. P. 7025 ..............................................................................................1

Fed. R. Civ. P. 9(b) .................................................................................................10

Fed. R. Civ. P. 24(a)(2) .............................................................................................7

Fed. R. Civ. P. 25(c) .......................................................................................1, 2, 6, 7

Fed. R. Evid. 201(b)(2) ...........................................................................................16

## PRELIMINARY STATEMENT

1.      As a threshold matter, the Trustee does not have the ability to substitute for the Committee in this Adversary Proceeding under Federal Rule of Civil Procedure 25(c) (as incorporated by Federal Rule of Bankruptcy Procedure 7025). The plain terms of the Final DIP Order foreclose the Trustee's efforts to prosecute the Complaint, and nothing in his combined opposition to Sun Capital's and CIT's motions for judgment on the pleadings and reply in support of the Motion to Substitute[1] (A.D.I. 136) (the "<u>Trustee Response</u>"), including the pages of warped interpretations of the Final DIP Order and reliance on one outlier decision from the District of New Jersey issued almost thirty years ago, changes this fact. The Final DIP Order is clear that the Debtors' waived any claims against the Prepetition Agent, the Prepetition Lenders, and – through its right of subrogation – Sun Capital, barring any claims by the Trustee. No further analysis is necessary. ***See* Section I *infra*.**

2.      The Complaint is subject to dismissal for additional, independent reasons, including that the safe harbor defense of section 546(e) of the Bankruptcy Code exempts the subject transfers from avoidance. The Trustee attempts to duck the application of section 546(e) to the claims against Sun Capital by incorrectly saying that the Complaint includes allegations of *actual* fraudulent transfers, which would be excepted from section 546(e). As explained below, however, ***no such allegations exist in the Complaint***. ***See* Section II.A *infra*.**

3.      Finally, the Trustee's latest theory, that judicial estoppel somehow precludes Sun Capital from requesting that it be placed in the same position it was before the settlement was consummated, fails as well. Not only was Sun Capital ultimately unsuccessful in the appeals, the

---

[1]   Undefined terms used herein shall have the meanings ascribed to them in Sun Capital's Combined Response in Opposition to the Motion to Substitute and Memorandum of Law in Support of its Motion for Judgment on the Pleadings (the "<u>Combined Response and Brief</u>").

Trustee ignores that its predecessor in interest, the Debtors, supported Sun Capital's efforts to dismiss the WARN plaintiffs' appeal of the settlement order.  *See* **Section II.C** *infra*.

4.    For these and the other reasons set forth below, the Motion to Substitute should be denied and the Complaint dismissed.

## ARGUMENT

**I.    THE TRUSTEE MAY NOT BE SUBSTITUTED FOR THE COMMITTEE TO PROSECUTE THIS CASE**

**A.    The Final DIP Order Bars the Trustee from Asserting the Claims in the Complaint.**

5.    As described in the Combined Response and Brief, the Trustee may not be substituted as the real party in interest to assert the claims and causes of action set forth in the Complaint because (i) the Trustee is not a transferee of an interest as contemplated by Rule 25(c) and (ii) the Debtors' waivers in the Final DIP Order prevent the Trustee from prosecuting the Complaint. Trying to dodge these barriers, the Trustee distorts the plain terms of the Final DIP Order, arguing that it grants him the authority to pursue the causes of action in the Complaint because the claims are derivative of the Debtors' estates. The Trustee cannot, however, escape the Final DIP Order's plain language waiving the claims he now asks this Court to resurrect.

6.    The Debtors unequivocally waived their claims against the Prepetition Agent, the Prepetition Lenders, and – through its right of subrogation – Sun Capital in the Final DIP Order, and such waivers bind the Trustee. *See* Comb. Resp. and Br., Section I.B, I.C.  Notably, the Trustee concedes that he receives the same "rights, responsibilities, and liabilities" of the Debtors, but then says that the Debtors' waivers somehow do not actually bar him from prosecuting the Complaint. *See* Trust. Resp. at 10. According to the Trustee, "[g]iven that a challenge was timely filed during the Investigation period, it is unclear how the Final DIP Order bars this action (or would prevent the Trustee from prosecuting a properly filed challenge)." *Id.*

at 11. The Trustee theorizes that he did not "need to receive any rights belonging to the Committee because the relevant causes of action belong to the estates," and the Final DIP Order's Investigation Period allowed any party in interest other than the Committee, including a chapter 7 trustee, to bring a challenge. *Id.* at 12. The text of the Final DIP Order, however, squarely impeaches the Trustee's claim.

7.      ***First***, the Trustee's reliance on the Final Order's provisions about the Investigation Period is unavailing. The Final DIP Order provides, in relevant part, that "the Committee or any party-in-interest, including a Chapter 7 or Chapter 11 trustee ***appointed or elected during the Investigation Period*** (defined below), shall be permitted to investigate (subject to the limitations set forth herein) and challenge" the prepetition debt and liens by "***no later than***" the expiration of the Investigation Period. Final DIP Order, ¶ 39 (emphasis added). The Final DIP Order sets separate Investigation Periods for parties in interest and the Committee: 75 days ***following the Petition Date for parties in interest, including a chapter 7 trustee***, and 75 days ***after the appointment of the Committee for the Committee***. *Id.*

8.      The Committee had standing to commence the Adversary Proceeding because its Investigation Period had not expired, but the Trustee's Investigation Period had already expired approximately ***five months before that time***. The Debtors' chapter 11 cases were filed on May 20, 2008. Under the Investigation Period, a chapter 7 trustee had until August 4, 2008 to commence a challenge, while the Committee had until August 18, 2008. The Committee and CIT, however, entered into four separate stipulations to expand the Investigation Period ***solely*** for the Committee until December 31, 2008, when it commenced this Adversary Proceeding. *See* Case No. 08-11006, D.I. 215, 277, 304, 333. The Trustee does not – and cannot – cite to any like stipulation extending the Investigation Period for parties in interest other than the Committee.

So, although the Trustee is correct that "a challenge was timely filed during the Investigation Period," Trust. Resp. at 11, it was filed by the Committee during *its* Investigation Period – the only party in interest with any remaining time under its Investigation Period. Because the Investigation Period for other parties in interest had already expired, the Debtors' waivers in the Final DIP Order prohibit the Trustee from prosecuting the Complaint.

9.      ***Secondly***, the Final DIP Order bars the Trustee's attempt to pursue the Complaint against Sun Capital because it only granted a trustee the benefit of pursuing a challenge if she or he was "appointed or elected during the Investigation Period." Final DIP Order, ¶ 39. As explained above, this did not occur.

10.      The Trustee attempts to avoid this conclusion with a footnote theory that this language in the Final DIP Order is inclusive rather than restrictive, *see* Trust. Resp. at 13 n.7, but the Trustee's interpretation would render the requirement that a trustee be appointed "during the Investigation Period" meaningless. *See* Final DIP Order at ¶39. The meaning of these words is obvious: party must bring a challenge during the Investigation Period, and a chapter 7 trustee would need to be appointed during the Investigation Period to do so.

11.      Significantly, there is no provision in the Final DIP Order that allows a chapter 7 trustee appointed after the Investigation Period ends to pursue a challenge.[2] To accept the Trustee's contrary arguments would require the Court to ignore the plain language of the Final DIP Order and the Debtors' binding waivers on the Trustee. The Court should decline to do so.

---

[2]      The Trustee argues in this footnote that cause exists to extend the Investigation Period to permit him to be a party to this litigation. *See* Trust. Resp. at 13, n.7. The Court should reject the Trustee's argument. First, there is no basis in the Final DIP Order to extend the Investigation Period after it expired. Second, the Final DIP Order was the product of extensive negotiations between the Debtors and the Postpetition Agent and Postpetition Lenders. Parties negotiate a final DIP order with the understanding that it establishes final terms regarding a debtor's postpetition financing. It would be manifestly inequitable and upend basic principles of finality upon which parties rely in negotiating such orders, including the Postpetition Agent and Postpetition Lenders in this case, for the Court to rewrite an order entered nearly twelve years ago.

12.     The Trustee's attempt to distinguish this case from *Hill v. Akamai Technologies (In re MS55, Inc.)*, 477 F.3d 1131 (10th Cir. 2007) fails. In *MS55*, the Tenth Circuit held that a chapter 7 trustee could not substitute for an official committee of unsecured creditors in an adversary proceeding because the Debtors waived the claims asserted in the Complaint under the Debtors' postpetition financing order.  *Id.* at 1137. The Trustee theorizes, however, that *MS55* includes a "critical distinction" that distinguishes it from this case: in *MS55* the debtors assigned the claims against the secured creditor to only the official committee of unsecured creditors. Trust. Resp. at 12.

13.     The Trustee's supposed "critical distinction" is irrelevant. He concedes that *MS55* "stands for the proposition" that "a chapter 7 trustee is bound by the terms of the relevant financing order," which necessarily includes the Debtors' agreements in such an order. Trust. Resp. at 13. The Tenth Circuit was unequivocal:

> It is well established that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession ***and is bound by prior actions of the debtor-in-possession to the extent approved by the court***. Even the trustee concedes he is "bound by court approved stipulations of a [debtor-in-possession] prior to conversion." ***The creditors' committee may have retained a right of action, but that does not remove the existing bar against the debtor-in-possession or, post-conversion, the trustee enforcing those rights***.

*MS55*, 477 F.3d 1131 at 1135-36 (emphasis added) (citations omitted).

14.     Because the Trustee is the successor to the Debtors, he is bound by the Debtors' waivers in the Final DIP Order, making continued reliance on *In re Rachles, Inc.*, 131 B.R. 782 (Bankr. D.N.J. 1991), untenable. The *Rachles* debtors had not waived their claims against the defendants. As a result, the chapter 7 trustee in *Rachles* was not prohibited from substituting for the official committee of unsecured creditors' lawsuit to assert derivative claims of the debtors'

estates. This dispositive difference in the Final DIP Order renders *Rachles* inapposite here. *See* Comb. Resp. and Br. at 12-13.

15.     As the Final DIP Order bars the Trustee from prosecuting the Complaint, the Trustee would only be able to substitute for the Committee under Rule 25(c) if he were the transferee of a "tangible interest" of the Committee, and he is not. *In re Northwestern Corp.*, 2006 WL 2849776, at *1 (D. Del. 2006); *see also* Comb. Resp. and Br., Section I.A. The Trustee attempts to avoid the requirements of Rule 25(c) by asserting that his interests "are perfectly aligned with those the Committee had." Mot. to Sub. at 4. Such "aligned" interests, however, are insufficient to permit substitution under Rule 25(c). *See Northwestern*, 2006 WL 2849776 at *1 (holding that ""[b]ecause the Plan Committee is not the transferee of any relevant interest under Rule 25(c), the Court concludes that it should not be substituted for the Official Committee as an intervenor in this Adversary Proceeding.").

16.     The Trustee suggests, however, that an automatic transfer of a committee's rights under Rule 25(c) somehow occurs upon conversion of chapter 11 cases to cases under chapter 7. *See* Trust. Resp. at 12 ("The relevant transfer for purposes of Rule 25(c) is the vesting of the avoidance powers in the Trustee upon conversion."). But the Trustee cites no authority to support this purported transfer given the unambiguous provisions of the Final DIP Order,[3] and, as described in the Combined Response and Brief, it is contrary to settled law. *See* Comb. Resp. and Br. at 9; *see also In re Constellation Enterprises LLC,* 587 B.R. 275, 286 (D. Del. 2018) ("There is no provision in the Bankruptcy Code that permits the Committee to hold or transfer rights or

---

[3]     The Trustee's quotation of the court's opinion in *In re World Health Alternatives, Inc.,* 344 B.R. 291 (Bankr. D. Del. 2006), omits the following emphasized language: "Upon conversion, the Committee will no longer exist. The chapter 7 trustee will then have the right to pursue causes of action on behalf of the estate ***against the Debtors' officers, directors, and professionals***." *Id.* at 303; *see* Trust. Resp. at 12. The emphasized language is crucial, as the Court had already found that the chapter 7 trustee could not pursue causes of action against the DIP lender pursuant to the debtors' final DIP financing order. In sum, the *World Health* opinion impeaches the Trustee's position.

interests, nor is there any provision that permits the Committee to transfer its statutory duties to another entity.").[4] Accordingly, the Trustee is unable to substitute for the Committee as the real party in interest under Rule 25(c).[5]

> **B.    The Debtors' Waivers in the Final DIP Order Apply to the Claims Against Sun Capital.**

17.    The waivers in the Final DIP Order also bar the Trustee from prosecuting the claims against Sun Capital. As an initial matter, the Trustee's reliance on the *Order Approving Stipulation and Order Authorizing the Official Committee of Unsecured Creditors to Commence Litigation Against (1) Sun Capital IV LP and its Affiliates and (2) the Debtors' Present and Former Officers and Directors* (the "Stipulation") as support for his contention that he may pursue the causes of action in the Complaint against Sun Capital is a red herring. The Stipulation provides that "[t]he parties hereby stipulate that the Committee is authorized and has standing to assert, on behalf of the Debtors' estates, any and all claims of the Debtors' estates against Sun . . . ." Stipulation, at ¶ 2.

18.    This grant of standing for the Committee, however, does not invalidate the Debtors' waivers to the Prepetition Agent, Prepetition Lenders or, through its subrogation rights, to Sun Capital. In fact, using substantially similar language in the Final DIP Order, the Debtors also granted the Committee standing to pursue claims against CIT, but there is no basis to assert

---

[4]    The Trustee's reliance on *In re ATS Prod. Corp.*, 2003 WL 25947346 (Bankr. E.D. Pa. 2003) does not support his contrary argument for two reasons. First, the case involved a chapter 7 trustee substituting in for the debtor in possession – not a committee – following conversion of the chapter 11 cases. Second, the Court noted only that the proper procedure for a chapter 7 trustee to continue litigation was to "seek" substitution under Rule 25(c). The defendant did not object to substitution, and, therefore, the Court held that the defendant waived any objection to substitution. *Id.* at *2, n.4. The *ATS* court never decided whether a Rule 25(c) substitution by a chapter 7 trustee for a committee was permissible.

[5]    The Trustee makes another footnote argument that the Court should permit the Trustee to intervene in this case under Rule 24(a)(2), "given that he has a clear interest in the [Adversary Proceeding] and, given the dissolution of the Committee no party is adequately protecting those interests now." Trust. Resp. at 11 n.6. As an initial matter, the Trustee did not include this request in the Motion to Substitute and the Court should deny the request on that basis. Further, the Trustee provides no authority to support a right to intervene under Rule 24(a)(2), especially given the Debtors' waivers in the Final DIP Order.

that this grant of standing against CIT invalidated the Debtors' waivers to the Prepetition Agent in the same order. *See* Final DIP Order, ¶ 39 ("The Committee is hereby granted standing to commence as appropriate a contested matter or adversary proceeding as contemplated by [the Investigation Period].").

19.     Next, the Trustee argues that Sun Capital is not covered by the Final DIP Order's waivers because it is not entitled to subrogation. The Trustee argues that Sun Capital "only inherits the rights and defenses available to CIT to the extent they relate to Sun Capital's rights as subrogee" and that Sun Capital "cannot use subrogation rights related to the Financing Agreement in order to protect its actions as an insider and equity holder of the Debtors." Trust. Resp. at 30.

20.     The Trustee misunderstands Sun Capital's position. Sun Capital's subrogation rights stem from the prepetition Guaranty executed in connection with the Forbearance Agreement, which, in exchange for an infusion of $2 million to the Debtors, effectively made Sun Capital a last-out lender to the Prepetition Financing. Accordingly, Sun Capital is entitled to the same protections afforded to the Prepetition Agent and Prepetition Lenders under the Final DIP Order. Accordingly, the Final DIP Order barred the Debtors, and now the Trustee, from bringing any claims against Sun Capital that they could not have brought against CIT as the Prepetition Agent.

21.     This result is entirely consistent with settled case law that permits beneficiaries of rights of subrogation to "step into the shoes of the person paid and acquires his rights as against the one whose debt was discharged." *Salzman v. Holiday Inns, Inc.*, 48 A.D.2d 258, 262 (N.Y.

Sup. Ct. 1975).[6] Because Sun Capital steps into the shoes of the Prepetition Lenders, it "is entitled to all of the latter's rights, benefits, and remedies" including "to avail himself or herself of any defense that could have been asserted by the party for whom he or she is substituted." 23 N.Y. Jur. 2d Contribution, Etc. § 180.

22.     Further, contrary to the Trustee's claims, *see* Trust. Resp. at 29, both the Guaranty and Sun's subrogation rights are included in the allegations in the Complaint. *See* Compl., ¶¶ 130, 284, 292, 341, 349, 368. In fact, Counts 15, 16, 22-25, and 30-33 seek to avoid transfers and conveyances regarding the pledges of assets that ultimately became subject to Sun Capital's Purported Lien – defined in the Complaint to be Sun Capital's first priority secured lien that arose as a result of the Guaranty. *See* Compl., ¶ 130. As a result, Sun Capital is permitted to rely upon its subrogation rights in its motion.

## II.     SUN CAPITAL IS ENTITLED TO JUDGMENT ON THE PLEADINGS ON ALL COUNTS IN THE COMPLAINT

### A.     The Claims for the Avoidance of Liens and Payments Fail as the Purported Transfers are Subject to the Safe-Harbor Provision of Section 546(e).

23.     Sun Capital is entitled to judgment on the pleadings for claims 13 – 33 of the Complaint because the alleged transfers fall within the safe harbor provision of section 546(e) of the Bankruptcy Code.

#### 1.     The Complaint Does Not Allege Causes of Action for Actual Fraudulent Transfers.

24.     In his Response, the Trustee spends pages arguing that Sun Capital cannot be granted judgment on Counts 13 – 17 because those counts include claims for actual fraudulent

---

[6]     This case law includes *In re Frescati Shipping Co.*, 886 F.3d 291, 309 (3d Cir. 2018), on which the Trustee relies heavily. In *Frescati*, the Third Circuit held that a third party could not assert defenses to a subrogee's claims that the third party could not assert against the subrogor. This has no applicability here. Sun Capital's opposition to the Motion to Substitute arises as a result of its capacity as subrogee under the Guaranty to the Prepetition Lenders.

transfers under section 548(a)(1)(A), to which section 546(e) is inapplicable. The Trustee's arguments are meritless.

25.      Although it is true that actual fraudulent transfers brought pursuant to section 548(a)(1)(A) are exempt from the purview of section 546(e), ***nowhere*** in the Complaint, let alone in Counts 13 – 17, does the Complaint (i) cite section 548(a)(1)(A), (ii) allege that Sun Capital acted with "actual intent to hinder, delay, or defraud" the Debtors' creditors, or (iii) rely on badges of fraud to establish a claim for actual fraudulent transfer. The absence of any such language is highlighted by the fact that Counts 13 – 17 each include the constructive fraudulent transfer language of section 548(a)(1)(B). There is simply nothing in the Complaint that would put Sun Capital on notice that the Complaint asserts claims for actual fraudulent transfers under section 548(a)(1)(A), let alone allegations sufficient to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) applicable to fraudulent transfer claims. *See In re Millennium Lab Holdings II, LLC*, 2019 WL 1005657, at \*3 (Bankr. D. Del. 2019) ("A fraudulent transfer claim has to be pled with specificity pursuant to Federal Rule of Civil Procedure 9(b) made applicable by Federal Rule of Bankruptcy Procedure 7009."). The only possible support for the Trustee's assertion that these counts include claims for actual fraudulent transfers is that they broadly cite to section "548" rather than any specific subsection. Given the complete lack of any indication that such claims are asserted in the Complaint, however, this is insufficient to allege claims for actual fraudulent transfers, and the Court should not allow the Trustee to read such claims into the Complaint.

26.      Similarly, the state law fraudulent transfer claims do not allege actual fraudulent transfers. The only counts that may even potentially be applicable are Counts 26, 28, 30 and 32 which cite generally to section 1304(a) of the DUFTA, a section that, similar to section 548 of

the Bankruptcy Code, includes both constructive and actual fraudulent transfers. Again, however, while those counts cite the constructive fraudulent transfer language of the statute, those counts include *no* language alleging actual fraudulent transfers. Moreover, even if those four Counts did assert claims for actual fraudulent transfers under section 1304(a) of the DUFTA (which they do not), courts have held that section 546(e) does not exempt state law actual fraudulent transfer claims from its purview. *See, e.g.*, *In re National Forge Co.*, 344 B.R. 340, 370 (Bankr. W.D. Pa. 2006) (holding that section 546(e) does not include an exemption for state law actual fraudulent transfer claims).

27.     The Trustee's reliance on *In re Physiotherapy Holdings, Inc.*, 2016 WL 3611831 (Bankr. D. Del. 2016), is misplaced. There, the Court addressed whether a ***litigation trustee***, whose claims were assigned to it by creditors under the debtors' chapter 11 plan, would be barred from asserting state law fraudulent transfer claims pursuant to section 546(e). This distinction is significant. In fact, early in the opinion, the Court dispensed with the possibility that its opinion would be applicable to a chapter 7 trustee seeking to assert state law fraudulent transfer claims notwithstanding section 546(e) by noting that, in that case, "[n]either party dispute[d] that the safe harbor of section 546(e) applies to claims brought by a trustee in bankruptcy under section 544(b)." *Physiotherapy*, 2016 WL 3611831, at *5. Ultimately, the Court held that the litigation trustee was not barred, in part, because the trustee was not a chapter 7 trustee. *Id.* at *9 ("[S]ection 546 is titled "limitations on avoidance powers" and section 546(e) only limits a *trustee's* ability to bring a fraudulent conveyance action. 11 U.S.C. § 546(e). The statute is silent with regard to a creditor's ability to bring such a claim.").

11

2.    Sun Capital May Assert that the Transfers Fall Within the Section 546(e) Safe Harbor Defense.

28.    Contrary to the Trustee's argument, Sun Capital did not waive the section 546(e) safe harbor defense. Sun Capital asserted all defenses available to it "under any and all federal rules and state statutes, laws, rules, or regulations, or the common law." Sun Answer at 114.[7] Further, Sun Capital should be permitted to assert its section 546(e) defense because the Trustee does not (and cannot) argue that he is prejudiced by any failure by Sun to specifically state the section 546(e) defense. "The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defenses should not succeed." *In re Sterten*, 546 F.3d 278, 285 (3d. Cir. 2008); *see also Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir.2003) (stating that the purpose of the requirement that a defendant must state an affirmative defense is to "protect the plaintiff from being ambushed with an affirmative defense."). Here, the Trustee is obviously not prejudiced by the defense because he is not yet even a plaintiff in the Adversary Proceeding. Therefore, the Court should find that Sun Capital may assert the section 546(e) safe harbor defense.[8]

3.    Section 546(e) is Applicable to Collapsed Transactions.

29.    The Trustee says that "one of the most fundamental – and fatal – flaws" of Sun Capital's argument that the transfers may not be avoided pursuant to section 546(e) of the Bankruptcy Code is that section 546(e) does not apply to collapsed transactions. To make his argument, the Trustee relies almost exclusively on *In re Mervyn's Hldg.'s, LLC*, 426 B.R. 488 (Bankr. D. Del. 2010), an opinion that Sun Capital addressed in the Combined Response and

---

[7]    Should the Court determine that this affirmative defense insufficient, Sun Capital requests leave to amend its Answer.

[8]    In addition to the foregoing reasons, because Sun Capital subrogates to the rights and defenses of CIT as explained in Section I.B, the Court should permit Sun Capital to assert the section 546(e) defense.

Brief. *See* Comb. Resp. and Br. at 25 n. 6. The Trustee's argument does not address the fact that

the *Mervyn's* Court did not provide any authority for its "general rule" or that no court since

*Mervyn's* has expressly followed the decision[9] while several have stated their disagreement with

it. *See, e.g., Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, 2020 WL 1509447, at *8

(Bankr. D. Del. Mar. 30, 2020) ("[T]he collapsing of the Restructuring's multiple integrated

transactions does not preclude [the defendant's] use of the securities safe harbor."). The dearth of

supporting case law is made more apparent by the Trustee's failure to cite a single opinion

following the rationale of *Mervyn's*.

30.     Perhaps aware of this absence of supporting case law, the Trustee strains to find

support for *Mervyn's* in the Supreme Court's decision in *Merit Management Group, LP v. FTI

Consulting, Inc.*, 138 S. Ct. 883 (2018). The Supreme Court's holding in *Merit Management*,

however, has no bearing on section 546(e)'s applicability to the fraudulent transfer claims at

issue. In *Merit Management*, the Supreme Court considered the following question:

> [H]ow the safe harbor operates in the context of a transfer that was executed via
> one or more transactions, *e.g.,* a transfer from A → D that was executed via B and
> C as intermediaries, such that the component parts of the transfer include A → B
> → C → D. If a trustee seeks to avoid the A → D transfer, and the § 546(e) safe
> harbor is invoked as a defense, the question becomes: When determining whether
> the § 546(e) securities safe harbor saves the transfer from avoidance, should
> courts look to the transfer that the trustee seeks to avoid (*i.e.,* A → D) to
> determine whether that transfer meets the safe-harbor criteria, or should courts
> look also to any component parts of the overarching transfer (*i.e.,* A → B → C →
> D)?

*Id.* at 888. Specifically, the Supreme Court considered whether a transfer between two parties

was unavoidable under section 546(e) because the overall transfer was effected through two

"financial institutions" (as defined under section 546(e)) that served as mere conduits to

---

[9]     As noted in the Combined Response and Brief, one District of Delaware court opinion issued by Judge Irenas,
sitting by designation, noted that under *Mervyn's*, the 546(e) defense may not be available, but did not (a)
provide further support for the *Mervyn's* ruling or (b) rule that *Mervyn's* would apply in that case. *See In re
Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 302 (D. Del. 2012).

complete the overall transfer. The Court held that "the only relevant transfer for purposes of the safe harbor is the transfer that the trustee seeks to avoid" (*i.e*, the A→ D transfer). *Id.*

31.     Applying the section 546(e) safe harbor to the fraudulent transfer claims in the Complaint is entirely consistent with the Supreme Court's *Merit Management* decision. Sun Capital and CIT are named as defendants in this Adversary Proceeding specifically because the Complaint's fraudulent transfer claims themselves allege that the transfers were made by, to, or for the benefit of either Sun Capital or CIT, each a covered entity under the section 546(e) safe harbor. Accordingly, section 546(e) does not prevent avoidance of the transfers because they were made through a conduit entity covered under the safe-harbor. Instead, section 546(e) prevents avoidance of the overall transfers (*i.e.*, the A→ D transfers) because they were made by, to, or for the benefit of entities covered under section 546(e), as alleged in the causes of action in the Complaint.[10] As a result, *Merit Management* is inapplicable in that regard.

32.     The Trustee argues, however, that the transfers may be avoided pursuant to *Merit Management* because the Trustee "seeks to avoid [ ] a collapsed, leveraged buyout" that included multiple conveyances and the transfer of real estate assets. Trust. Resp. at 25. That may be what the Trustee is effectively seeking to undo, but the specific transfers that are the subject of the fraudulent transfer claims are (i) the liens granted to CIT and the loan obligations incurred in connection with the Financing Agreement, (ii) the transfers made to CIT in connection with the Sale-Lease Backs, and (iii) the payment of the Transaction Fees. *See* Comb. Resp. and Br., Section II. As a result, based on the Supreme Court's holding in *Merit Management*, those are

---

[10]     Further, while the Complaint does not name the Bank of Montreal as a defendant, the Complaint's allegations provide that the Bridge Loan was made by the Bank of Montreal, also a covered entity under section 546(e). *See* Comp., at 46. Accordingly, Bank of Montreal did not serve as a mere conduit.

the relevant transfers for purposes of the section 546(e) safe harbor.[11] For the reasons set forth in Section II.B.2 of the Combined Response and Brief and in Section II.A.4 *infra*, the safe harbor of section 546(e) prevents avoidance of those transfers.

33.     Moreover, the Trustee should not be permitted to use the collapsing doctrine as both a sword and a shield. The Trustee relies heavily on collapsing doctrine to assert the fraudulent transfer claims in the Complaint. If the Trustee wishes to collapse the transactions for the purposes of assessing fraudulent transfer liability, he should live with any defenses that arise as a result, including that the targeted "integrated transactions" encompassed transfers made in connection with a securities contract. It would be inequitable to allow the Trustee to have it both ways: to permit him to collapse the transactions, but escape the adverse consequences that arise.

4.     Each of the Transfers Fall Within the Section 546(e) Safe Harbor.

i.     *CIT, Sun Capital, and the Prepetition Lenders are Each Covered Entities Under Section 546(e).*

34.     CIT, Sun Capital, and the Prepetition Lenders each qualify as a "financial institution" and/or a "financial participant" for purposes of the section 546(e) safe harbor. *See also* Comb. Resp. and Br., Section II.B.2.i. By his Response, the Trustee does not meaningfully dispute that CIT and the Bank of Montreal are each "financial institutions." Instead, the Trustee asserts only that "the question of whether Defendants are financial institutions or participants under § 546(e) is a deeply factual inquiry, which is not ripe for determination." Trust. Resp. at 27. It is difficult to imagine the "deep factual inquiry" necessary to determine whether CIT and the Bank of Montreal (or the other Prepetition Lenders) are each a "commercial or savings bank." 11 U.S.C. § 101(22). Given that "a financial institution need not include the words 'bank'

---

[11]     The Trustee suggests that the *Schnabel* decision supports his argument that the LBO is the "relevant transfer" under *Merit Management*. Trust. Resp. at 24. The Trustee is wrong. The fraudulent transfer claims in the complaint sought to avoid the "transfers of CDSI I stock made to the Defendants in the Restructuring" specifically. *Schnabel*, 2020 WL 1509447, at *8; *see also* Adv. Pro. No. 14-50356 (A.D.I. 10).

15

or 'savings and loan' in its name to be a financial institution," Sun Capital submits that the Court can determine at this stage with confidence that both entities are financial institutions. *Liquidation Trust of Hechinger Inv. Co. of Delaware v. Fleet Retail Finance Group (In re Hechinger Inv. Co. of Delaware)*, 274 B.R. 71, 87-88 (D. Del. 2002).

35.     Sun Capital's asserted status as a financial institution and a financial participant also draws the Trustee's ire. The Trustee's arguments, however, are unavailing.

36.     As an initial matter, the Trustee's argument that Sun Capital does not subrogate to CIT's position as a financial institution is incorrect. As discussed in Section I.B *supra*, Sun Capital steps into the shoes of CIT and is able to assert any defenses that CIT is able to assert stemming from its position as Prepetition Agent.

37.     Further, the Trustee's argument that the Court may not rely on tax returns of Sun Capital Partners IV, L.P. ("Sun IV") is also wrong. Federal Rule of Evidence 201(b)(2) allows the Court to take judicial notice of facts "not subject to reasonable dispute because [they] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court may consider Sun IV's tax returns because they show that Sun Capital held mark-to-market positions in investments well in excess of the $100 million threshold provided for in the definition of financial participant. *See* 11 U.S.C. § 101(22A). Further, the authority cited by Sun Capital in the Combined Response and Brief took judicial notice of the contents of the tax returns. *See, e.g.*, *Nix v. United States*, 2018 WL 8244925, at *28 n.9 (E.D. Tex. 2018) (taking judicial notice of the date of the tax returns and the losses reflected in the returns). Therefore, Sun Capital submits that the Court can and should take judicial notice of Sun Capital's status as a financial participant.

38.    The Trustee further argues that even if the Court takes judicial notice of Sun IV's tax returns, the definition of "financial participant" does not extend to affiliates or subsidiaries and "does little to satisfy the requirements of the 546(e) Safe Harbor for the other Sun entities included in the Complaint." Trust. Resp. at 28. The Trustee's argument, however, ignores that any transactions made to or for the benefit of Sun IV would not be avoided and the other Sun Capital entities would therefore not face liability.

39.    In addition, and independently, the Trustee seeks to hold both CIT and Sun Capital liable for many of the same alleged fraudulent transfers. To the extent that the Court determines that any of the transfers fall within the section 546(e) safe harbor provision, the Trustee may not seek to recover on account of such transfer from any party. Accordingly, even if the Court determines that Sun Capital is unable to establish that it is a financial institution or a financial participant at this stage, the Trustee may not seek to recover from Sun Capital for transfers made by, to, or for the benefit of CIT and the Prepetition Lenders, including the Bank of Montreal, in connection with securities contracts.

ii.    *Each of the Alleged Transfers Sought to Be Avoided Were Made in Connection with a Securities Contract.*

40.    In his Response, the Trustee spends only a few sentences evaluating the applicability of each transfer under section 546(e). The Trustee makes no attempt to refute Sun Capital's explication in the Combined Response and Brief of the applicability of the safe harbor to each transaction and the vast case law supporting it. The Trustee simply asserts that section 546(e) does not apply because the alleged fraudulent transfers "are not the purchase of shares from Jevic shareholders," and that "[t]he LBO Transactions consist of loan and real estate transactions that do not involve a securities contract." Trust. Resp. at 26. The Trustee's

arguments ignore the language of section 546(e), the definition of "securities contract", and related case law.

41.     As an initial matter, the Bridge Loan, Financing Agreement, Guaranty and the various agreements by which Sun Capital purchased the shares to consummate the LBO all constitute "securities contracts" under section 741(7) of the Bankruptcy Code. *See* Comb. Resp. and Br. at Section II.B.2.ii. Also, as discussed in the Combined Response and Brief, the definition of "'securities contract' expansively includes contracts for the purchase or sale of securities, as well as any agreements that are *similar* or *related* to contracts for the purchase or sale of securities." *Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC),* 773 F.3d 411, 418 (2d Cir. 2014) (emphasis in original); *see also id.* at 418 (observing that section 741(7) "defines 'securities contract' with extraordinary breadth"). Even the Trustee states in his Response that the true transaction he wishes to avoid is the LBO, the core element of which involved the purchase of shares. *See* Trust. Resp. at 25. As a result, each of these agreements constitutes a "securities contract."

42.     Further, according to the allegations in the Complaint, each of the transfers the Trustee seeks to avoid were made "in connection with" one or all of the foregoing securities contracts, and therefore may not be avoided by the Trustee pursuant to section 546(e). The Complaint alleges that such transfers were "interdependent related transactions" made in connection with the LBO, Re-Financing and the Sale-Lease Back, and therefore should be collapsed together. *See, e.g.*, Compl., ¶ 150. Therefore, the transfers were plainly made "in connection with" securities contracts pursuant to which the shares of the other shareholders were purchased in the LBO, and fall within the safe harbor provision of section 546(e). Moreover, certain of the alleged fraudulent transfers were made specifically in connection with the Bridge

Loan, the Financing Agreement and/or the Guaranty – each a securities contract as previously explained. Therefore, not only were the alleged fraudulent transfers all made in connection with the securities contracts by which Sun Capital acquired the Company, they were also made in connection with the securities contracts that are the subject of the allegations in the Complaint.

> **B.    Sun Capital is Entitled to Judgment on the Pleadings With Respect to the Equitable Subordination Claim.**

43.    Despite his arguments in the Response, the Trustee is unable to change the fact that the Complaint's allegations in support of the equitable subordination claim against Sun Capital fail to overcome the same pleading deficiencies that led to the dismissal of CIT's claim in the First Amended Complaint, as detailed in Section II.C of the Combined Response and Brief. Thus, the claim for equitable subordination against Sun Capital fails.

> **C.    The Trustee's Judicial Estoppel Argument is Meritless.**

44.     The Court should reject the Trustee's argument that Sun Capital should be judicially estopped from arguing that the settlement contributions should be returned. Judicial estoppel has no applicability to this case.

45.    The Trustee stretches beyond recognition the doctrine of judicial estoppel. The Trustee's entire argument is based on Sun Capital's assertion to the District Court in the appeal of the Settlement and Dismissal Order (an appeal before the Trustee was even appointed) that the District Court should uphold the Settlement and Dismissal Order because it would be virtually impossible to return the settlement funds. The Trustee says that this represents an inconsistent position by Sun Capital regarding the possibility of the return of the settlement funds paid in connection with Settlement and Dismissal Order. The Trustee further argues that Sun Capital benefited from its prior inconsistent position and that Sun Capital's "change in position also appears to be an attempt to play fast and loose with the court." Trust. Resp. at 38.

46.    The Trustee's argument does not approach meeting the requirements of judicial estoppel. First, the Supreme Court reversed the Third Circuit and District Court decisions upholding the Settlement and Dismissal Order notwithstanding Sun Capital's equitable mootness argument. This is fatal to the Trustee's judicial estoppel argument. The Third Circuit has held that judicial estoppel is not appropriate "when the initial claim was never accepted or adopted by a court." *Montrose Medical Group Participating Savings Plan v. Bulger,* 243 F.3d 773, 782 (3d Cir. 2001) (applying *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805 (1999)); *see also In re Integrated Health Services, Inc.*, 304 B.R. 101, 109 (Bankr. D. Del. 2004) ("[T]he party must have succeeded in persuading a court to accept the earlier position, so that acceptance of the subsequent inconsistent position in a later proceeding would lead one to believe that the court has been misled in either one of those positions."); *see also In re DVI, Inc.*, 326 B.R. 301, 308 (Bankr. D. Del. 2005) (similar). Moreover, as the Trustee was not a party to the appeal, Sun Capital's alleged inconsistent positions have not been to the detriment of the Trustee.[12] *See In re The IT Group, Inc.*, 322 B.R. 729, 735 (Bankr. D. Del. 2005).

47.    What is more, a claim for judicial estoppel requires bad faith. The Trustee asserts, without basis, that Sun Capital is "playing fast and loose with the court" (*i.e.*, acting in bad faith). But simply saying that Sun Capital has taken inconsistent positions is not enough. *See In re DVI, Inc.*, 326 B.R. 301, 307 (Bankr. D. Del. 2005). The Trustee must allege intentional wrongdoing, which he has not, and cannot, do. *In re Harnischfeger Industries, Inc.*, 293 B.R. 650, 656 (Bankr. D. Del. 2003); *see also In re Riazuddin*, 366 B.R. 177, 189 (Bankr. D. Del. 2007) ("Because the purpose of judicial estoppel is to punish those who attempt to manipulate the court system through deception, that purpose is not served by punishing those who have no such intent.").

---

[12]    The Trustee continues to ignore that he is the successor to the Debtors, who (along with the Committee) supported Sun Capital's requested dismissal of the appeal.

Dated:  May 28, 2020

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew O. Talmo*
Curtis S. Miller (No. 4583)
Matthew O. Talmo (No. 6333)
1201 North Market Street, Suite 1600
Wilmington, DE  19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
cmiller@mnat.com
mtalmo@mnat.com

-and-

KIRKLAND & ELLIS LLP
James A. Stempel
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
jstempel@kirkland.com

James P. Gillespie
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5190
Facsimile: (202) 389-5200
james.gillespie@kirkland.com

*Counsel to Sun Capital Partners IV, LP, Sun Capital Partners Management IV, LLC, and Sun Capital Partners, Inc.*

13790111.1