# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| JEVIC HOLDING CORP., *et al.*,[1] | Case No. 08-11006 (BLS) |
| Debtors. | (Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the bankruptcy estates of JEVIC HOLDING CORP., *et al.*, | Adv. No. 08-51903 (BLS) |
| Plaintiff, | |
| v. | Re: Adv. Dkt. Nos. 43, 121-122, 130-132 and 136 |
| THE CIT GROUP/BUSINESS CREDIT, INC., in its capacity as Agent, *et al.*, | |
| Defendants. | |

**REPLY OF THE CIT GROUP/BUSINESS CREDIT, INC. IN (I) OPPOSITION TO MOTION TO SUBSTITUTE AS REAL PARTY IN INTEREST, AND (II) SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Kurt F. Gwynne (No. 3951)
Katelin A. Morales (No. 6683)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile:  (302) 778-7575
Email: kgwynne@reedsmith.com
        kmorales@reedsmith.com

Counsel for Defendant,
The CIT Group/Business Credit, Inc., as agent
for itself and the other prepetition lenders

---

[1] The Debtors in this Chapter 7 case, along with the last four digits of the Debtors' federal tax identification numbers are: Jevic Holding Corp. (8738); Creek Road Properties, LLC (9874); and Jevic Transportation, Inc. (3402).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

REPLY ........................................................................................................................... 3

A.    The Trustee Cannot "Step Into the Shoes" of the Committee. ............................... 3

B.    The Refinancing Facility and the Sale-Leaseback Cannot Be Collapsed Into
a Single Transaction with the Acquisition Facility............................................. 9

C.    If the Transactions Are Collapsed, the Section 546(e) "Safe Harbor" Defense
Requires Judgment in CIT's Favor on All Avoidance Claims. ....................... 12

    i.    The Trustee's Argument that the 546(e) Safe Harbor Defense Does
Not Apply to Claims of Actual Fraud Is Irrelevant Because the
Complaint Does Not Allege Actual Fraud............................................. 12

    ii.   Section 546(e) Applies if the Transactions Are Collapsed.................... 13

D.    The Allegations in the Complaint Unwittingly Evidence Reasonably
Equivalent Value................................................................................................ 15

    i.    The Trustee's Argument that the Court Already Held that the
Complaint Adequately Alleges Lack of Reasonably Equivalent Value
Is Irrelevant to CIT's Present Argument................................................ 15

    ii.   The Debtors Received Reasonably Equivalent Value. .......................... 15

E.    The Complaint Does Not Adequately Allege Equitable Subordination. ........... 17

F.    CIT is Not Judicially Estopped From Arguing that The Administrative Claim
Fund Should be Returned.................................................................................. 18

CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Norwest Bank, Minneapolis, N.A.*,
  964 F.2d 797 (8th Cir. 1992) .............................................................................4, 8

*Brandt v. B.A. Capital Co. (In re Plassein Intl. Corp.)*,
  590 F. 3d 252 (3d Cir. 2009)...............................................................................13

*Citibank v. Grupo Cupley, Inc.*,
  382 F.3d 29 (1st Cir. 2009)..................................................................................9

*Coast Auto. Grp, Ltd. v. VW Credit, Inc.*,
  34 Fed. Appx. 818 (3d Cir. 2002).......................................................................19

*Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*,
  2020 WL 1509447 (Bankr. D. Del. Mar. 30, 2020).........................................13, 14

*In re ATS Prod. Corp.*,
  2003 WL 25947346 (Bankr. E.D. Pa. June 5, 2003) ...........................................6

*In re BX Acquisitions, Inc.*,
  2019 WL 1768144 (B.A.P. 6th Cir. Apr. 19, 2019) .............................................3

*In re Carolina Fluid Handling Intermediate Holding Corp.*,
  467 B.R. 743 (Bankr. D. Del. 2012), *aff'd*, 2013 WL 1124064 (D. Del. Mar.
  18, 2013) ...............................................................................................................8

*In re Mervyn's Holdings*, LLC,
  426 B.R. 488 (Bankr. D. Del. 2010) ...................................................................14

*In re MS55, Inc.*,
  477 F. 3d 1131 (10th Cir. 2007) .......................................................................6, 8

*In re Oakwood Homes Corp.*,
  325 B.R. 696 (Bankr. D. Del. 2005) ...................................................................13

*In re S. Rachles, Inc.*,
  131 B.R. 782 (Bankr. D.N.J. 1991) .....................................................................8

*In re Tanglewood Farms, Inc. of Elizabeth City*,
  2013 WL 1829910 (Bankr. E.D.N.C. May 1, 2013)............................................6

*In re World Health Alternatives, Inc.*,
    344 B.R. 291 (Bankr. D. Del. 2006) ...................................................................5, 6

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*,
    181 F.3d 505 (3d Cir. 1999), *abrogated in part on other grounds*, *Merit Mgmt.*
    *Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018) .......................................13

*Marc S. Kirschner, as Litig. Trustee for the Tribune Litig. Trust v. Dennis J.*
    *Fitzsimmons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
    2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018), *reconsideration denied*, 2019
    WL 549380 (S.D.N.Y. Feb. 12, 2019)...............................................................10, 11

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
    138 S. Ct. 883 (2018)............................................................................................14

*Montrose Medical Grp. Participating Sav. Plan v. Bulger*,
    243 F.3d 773 (3d Cir. 2001)..................................................................................19

*Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse*
    *(In re Champion Enters., Inc.)*,
    2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010) ................................................17

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del. v. Fleet*
    *Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*,
    274 B.R. 71 (D. Del. 2002)...................................................................................13

*Official Committee of Unsecured Creditors v. The CIT Group/Business Credit,*
    *Inc. et al. (In re Jevic Holding Corp.)*,
    2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011) .............................10, 11, 16, 18

*Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*,
    554 F.3d 382 (3d Cir. 2009)..................................................................................17

## Rules

Fed. R. Bankr. P. 7009...............................................................................................13

## Statutes

11 U.S.C. § 546(e) ....................................................................................................12

28 U.S.C. 2701(b) .......................................................................................................9

The CIT Group/Business Credit, Inc. ("CIT"), as agent for itself and BMO Harris Bank N.A., Bank of America, N.A., PNC Bank, National Association, and Wells Fargo Capital Finance (together with CIT in its capacity as lender, the "Lender Group"), by and through its counsel, Reed Smith LLP, submits this Reply Brief (the "Reply Brief") in (I) Opposition to the *Motion to Substitute Chapter 7 Trustee as Real Party in Interest* (the "Motion to Substitute") [Adv. Dkt. No. 121], and (II) Support of its *Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)* (the "Motion for Judgment on the Pleadings") [Adv. Dkt. No. 130], and states as follows:[2]

## INTRODUCTION

1.      The Trustee argues that the Court should grant the Motion to Substitute because (i) the Trustee derivatively may assert the claims in the Complaint, (ii) the Debtors did not waive their right to assert a claim against CIT in the DIP Order, and (iii) the Trustee "steps into the shoes of" the Debtors upon conversion to chapter 7.  *Chapter 7 Trustee's Combined (I) Opposition Brief to Sun Capital's and CIT Group/Business Credit, Inc.'s Motions for Judgment on the Pleadings, and (II) Reply Brief in Support of Motion to Substitute Chapter 7 Trustee as Real Party in Interest* (the "Trustee Brief") [Adv. Dkt. No. 136], pp. 10–15.  The Trustee is incorrect.

2.      ***First,*** as the Trustee concedes, the Trustee steps into the Debtors' shoes, *not* the Committee's shoes.

3.      ***Second***, the Debtors unequivocally waived their right to assert a claim against CIT in the DIP Order, and the Trustee is barred from bringing the claims in the Complaint.  It is

---

[2] Capitalized terms not defined in this Reply Brief shall have the meanings ascribed to them in the *Opening Brief of the CIT Group/Business Credit Inc., as Agent, in (I) Opposition to the Motion to Substitute Chapter 7 Trustee as Real Party in Interest and (II) Support of the Motion of the CIT Group/Business Credit, Inc., as Agent, for Judgment on the Pleadings* (the "CIT Brief") [Adv. Dkt. No. 132].

irrelevant whether a claim still "exists" as the Trustee alleges because the Debtors waived their right to *pursue* any such claims in exchange for the financing provided under the DIP Order.

4.      The Trustee also argues that the Court should deny the Motion for Judgment on the Pleadings because (i) the section 546(e) "safe harbor" defense does not apply to actual fraudulent transfer claims; (ii) the section 546(e) defense is inapplicable to collapsed transactions (such as leveraged buyouts), and here, the transactions should be collapsed; (iii) the Court already determined that the Complaint adequately alleges lack of reasonably equivalent value; (iv) CIT is an "insider," and the reshuffling of allegations in the Complaint adequately alleges equitable subordination; and (v) CIT is judicially estopped from arguing that the Trustee should disgorge the Administrative Claim Fund before suing CIT.  *Id.*, pp. 15–39.  The Trustee is incorrect.

5.      *First,* the Complaint does not contain any allegation of actual fraud.  Therefore, whether section 546(e) applies to actual fraudulent transfer claims is irrelevant.

6.      *Second,* assuming that the transactions can be collapsed (contrary to recent case law), multiple binding decisions of the United States Court of Appeals for the Third Circuit have applied section 546(e) *in the leveraged buyout ("LBO") context*.

7.      *Third,* the Court's prior decision regarding the adequacy of pleading lack of reasonable equivalent value is not determinative because CIT raises an entirely different issue (*i.e.,* reasonably equivalent value in the context of the alleged "collapsed" transactions) in the Motion for Judgment on the Pleadings than CIT raised in its prior motion to dismiss (*i.e.,* the exchange of loan proceeds and liens solely in the context of the Refinancing Facility).  The Trustee does not (and cannot) dispute that the Complaint and the documents relied upon therein establish that, although former shareholders received approximately $41 million in the LBO (*i.e.,* the Bank of

Montreal financing), the Debtors received a release of approximately $53 million in intercompany claims. Thus, the *Complaint* establishes that the Debtors received reasonably equivalent value.

8.    **Fourth,** the Complaint does not adequately allege equitable subordination because (as the Court has determined) CIT is not an "insider," and the Complaint does not allege otherwise. The mere reshuffling of allegations in the prior version of the Complaint does not do anything to satisfy the pleading standard that the prior version of the Complaint also failed to satisfy.

9.    **Fifth,** CIT is not judicially estopped from arguing that the Trustee should disgorge the Administrative Claim Fund before asserting any claims against CIT. The fact that it was "virtually impossible" or "unlikely" that CIT could recover all of the funds distributed from the Administrative Claim Fund does not preclude CIT from demanding restoration of its pre-settlement position before being sued for claims that were released under the prior settlement (approval of which was vacated). Indeed, the Trustee should be judicially estopped as he seeks in another adversary proceeding to keep recoveries of CIT's funds while simultaneously suing CIT on account of claims that were released in exchange for such funds.

## **REPLY**

**A.    The Trustee Cannot "Step Into the Shoes" of the Committee.**

10.    The Trustee admits that a chapter 7 trustee "steps into the shoes" of the debtor and can only assert those causes of action possessed by the debtor. Trustee Brief, p. 10; *see also* CIT Brief, pp. 11–12. The Trustee, however, erroneously argues that the Debtors did not waive in the DIP Order their right to pursue the claims alleged in the Complaint. Trustee Brief, pp. 10–15.

11.    A debtor-in-possession's agreement to waive or limit the terms upon which fraudulent transfers can be asserted against lenders is binding on a chapter 7 trustee. *See In re BX Acquisitions, Inc.*, 2019 WL 1768144, at *6 (B.A.P. 6th Cir. Apr. 19, 2019) ("Pursuant to 11 U.S.C. § 1107(a), a debtor-in-possession is granted the powers of a trustee. It follows that an agreement

made by a debtor-in-possession that is set forth in an agreed cash collateral order generally will—unless the order expressly states otherwise—be binding on a subsequently appointed trustee.") (quotation marks omitted).  "[I]t is axiomatic that the Trustee is bound by the acts of the debtor-in-possession." *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir. 1992).

12.    The Trustee concedes that the Debtors (subject to the rights of parties in interest to assert timely claims on behalf of the bankruptcy estates) stipulated to the validity, enforceability and non-avoidability of CIT's liens and "waived any and all claims and causes of action against" CIT (and the Lender Group).  *See* DIP Order, ¶¶ 38-39 and 61; Trustee Brief, p. 11.

13.    Pursuant to the DIP Order, those stipulations are "binding upon the Debtors and any successor thereto (including without limitation any Chapter 7 . . . trustee appointed or elected for any of the Debtors) *in all circumstances*."  *See* DIP Order, ¶ 60 (emphasis added).

14.    The Trustee points out that the DIP Order did not "exclusively link the right to pursue a challenge to the Committee.  In fact, the DIP Order specifically states that 'any party-in-interest, including a Chapter 7 . . . trustee *appointed or elected during the Investigation Period . . . , shall be permitted to . . . assert . . . any claims or causes of action against the [Defendants] on behalf of the Debtors' estates . . . .'"  Trustee Brief, p. 12 (citing DIP Order, ¶ 39) (emphasis added).  The Trustee was neither appointed nor elected during the Investigation Period.[3]

---

[3] The Trustee engages in linguistic gymnastics in attempting to argue that the phrase "any party-in-interest, including a Chapter 7 . . . trustee appointed or elected during the Investigation Period" in the DIP Order should not be read to limit the right of "any party-in-interest"—including (the Trustee argues) a trustee appointed or elected *outside* of the Investigation Period—to assert a challenge.  Trustee Brief, p. 13, n. 7. The Trustee, however, ignores that the remainder of the *same sentence* requires a challenge to be "filed no later than 75 days from the Petition Date or with respect to the Committee not later than 75 days after the date of the appointment of the Committee."  DIP Order, ¶ 39.  The Trustee also ignores that the DIP Order establishes *separate* Investigation Periods for parties in interest and the Committee: (i) 75 days following the Petition Date for parties in interest, including a chapter 7 trustee, which deadline expired almost 12 years ago; and (ii) 75 days after the appointment of the Committee for the Committee.  *See* DIP Order, ¶ 39. Although the Committee had standing to commence the Adversary Proceeding because its Investigation Period had not expired (as it was extended by multiple stipulations), the Trustee's Investigation Period had already expired approximately five months before the Adversary Proceeding was commenced.  In short,

15.     Although the Committee timely filed the Adversary Proceeding against CIT, the Cases subsequently were converted to chapter 7 bankruptcy cases.  Upon conversion, the Committee was disbanded and the Trustee was appointed.  The Trustee, as the successor to the Debtors, is bound by the Debtors' admissions and waivers and cannot step into the Committee's shoes as plaintiff in the Adversary Proceeding.  *See* DIP Order, ¶ 60 (Debtors' "stipulations and admissions" are "binding upon . . . any Chapter 7 . . . trustee appointed or elected for any of the Debtors[] *in all circumstances*")  (emphasis added).

16.     The Trustee relies upon *In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006), to support his argument that he can derivatively assert the Committee's claims against CIT.  The Trustee, however, misreads *World Health*.  In that case, the Court specifically noted that the debtor stipulated to the allowability and perfection of CapitalSource's secured claim and that such stipulations "are binding on their successors and assigns, including any bankruptcy trustee."  *Id.* at 293.  Although the debtor and the trustee were bound by those stipulations, the debtor also had potential claims against its officers and directors, which were not waived in the financing order.  When the Court was considering what might happen upon conversion to chapter 7, the court did *not* say that the chapter 7 trustee could step into the committee's shoes with respect to any challenge to CapitalSource's claims or liens.  Instead, the court simply said that, "[u]pon conversion, the Committee will no longer exist.  The chapter 7 trustee will then have the right to pursue causes of action on behalf of the estate *against the Debtors' officers, directors, and*

---

the only "party-in-interest" that timely filed a challenge was the Committee—and the Trustee cannot "step into the shoes" of the Committee.

*professionals.*" *Id.* at 303 (emphasized added). The Trustee omits that italicized language in his quotation of *World Health.* Trustee Brief, p. 12.[4]

17.     The Trustee erroneously argues that because the Committee timely asserted a challenge during the Investigation Period, the Debtors' estates were not otherwise barred from bringing claims against CIT, and, therefore, the DIP Order does not bar the Trustee from bringing the claims in the Complaint. The Tenth Circuit has rejected that same argument. The issue here is not whether a claim may exist–the question is *who* may assert such a claim and whether the Debtor waived its right to do so in the DIP Order. *See In re MS55, Inc.,* 477 F. 3d 1131, 1136 (10th Cir. 2007) ("[T]he real question is not whether a full release exists, but rather who retained any existing right to bring an avoidance action. It is well established that a chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by prior actions of the debtor-in-possession to the extent approved by the court . . . *The creditors' committee may have retained a right of action, but that does not remove the existing bar against the debtor-in-possession or, post-conversion, the trustee enforcing those rights. [The debtor] and, post-conversion, the trustee are barred from bringing an avoidance action regardless of whether the right to an avoidance action exists.*") (emphasis added). "The derivative rights exist like a sword in a stone, but there is no Arthur to claim them." *MS55, Inc.*, 477 F.3d at 1140; *see also In re Tanglewood Farms, Inc. of Elizabeth City*, 2013 WL 1829910, at *10 (Bankr. E.D.N.C. May 1, 2013) (dismissing trustee's adversary proceeding to avoid and recover fraudulent and preferential transfers "because he, stepping into the shoes of the debtor-in-possession, cannot attack or take a position inconsistent

---

[4] For similar reasons, the Trustee erroneously relies upon *In re ATS Prod. Corp.*, 2003 WL 25947346 (Bankr. E.D. Pa. June 5, 2003). The *ATS* decision does not address the issue before the Court, *i.e.,* whether a chapter 7 trustee can assert a claim when the debtor—into whose shoes the trustee steps—has waived the right to bring such claim. Instead, the court simply states, in a footnote, the unremarkable general proposition that a trustee can continue litigation post-conversion from chapter 11 to chapter 7. *See ATS*, 2003 WL 25947346, at *2, n.4.

with those actions previously taken by the debtor-in-possession").   Here, CIT provided DIP Financing in exchange for the waivers contained in the DIP Order and the Court should hold the Debtors to their bargain.

18.     The Trustee makes one last attempt to avoid *In re MS55, Inc*.   Specifically, the Trustee argues that a "critical distinction" between *MS55* and the present case is the fact that the "Tenth Circuit noted that the financing order barred both the "Debtor's estate ... [and] debtor" from pursuing any causes of action against the secured creditors" whereas, in the present case (according to the Trustee), "the avoidance actions remain as rights of the estate."   Trustee Brief, p. 12.   The distinction asserted by the Trustee simply does *not* exist.   The DIP Order in this case also barred any entity (including successors and assigns) from asserting challenges after the Investigation Period.   *See* DIP Order, ¶ 39 ("shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of  the *Debtors' estates*, *including without limitation, any successor thereto*") (emphasis added); ¶ 56 ("The provisions of this Final Order *shall be binding upon* . . . the *Debtors and their respective successors and assigns (including any trustee* . . . *appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors)*") (emphasis added).   The Trustee's argument that the DIP Order does not bar the estates from asserting claims against CIT after the expiration of the Investigation Period is simply false.

19.     The only difference between *MS55* and the present case is that the financing order in *MS55* permitted only the committee (on behalf of the estate) to assert a challenge during the investigation period, whereas the DIP Order permitted the Committee and other parties-in-interest (on behalf of the estates) to assert a timely challenge.   That distinction is meaningless.   Here, only

the Committee (on behalf of the estates) asserted a timely challenge during the Investigation Period.

20.    The Trustee also asserts that the "situation is quite similar to that found in" *In re S. Rachles, Inc.*, 131 B.R. 782 (Bankr. D.N.J. 1991).  The opposite is true.  "*Rachles* should not be read to stand for a proposition that the creditors' committee has independent avoidance claims of its own to which the trustee inevitably succeeds.  The trustee in *Rachles* was not succeeding to the independent rights of the creditors' committee, but rather joining the committee's already initiated derivative claim of the debtor's rights ***in a case where the trustee was not otherwise barred by previous arrangements made by the debtor-in-possession.***"  *MS55, Inc.*, 477 F.3d at 1139 (emphasis added).

21.    Financing orders, like the DIP Order and agreements among the parties before the Court, must be enforced if this Court is to retain the predictability for which it is recognized. Allowing a trustee to evade a debtor-in-possession's prior agreements would be highly inequitable and would have a chilling effect on the ability of a debtor-in-possession to negotiate compromises in chapter 11.  "Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee."  *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir. 1992); *see also In re Carolina Fluid Handling Intermediate Holding Corp.*, 467 B.R. 743, 756, n.67 (Bankr. D. Del. 2012) (quoting *Armstrong*), *aff'd*, 2013 WL 1124064 (D. Del. Mar. 18, 2013). Here, in exchange for providing DIP Financing, CIT bargained for and received a complete release subject to a 75 day Investigation Period.  The Debtors or the Committee could have attempted to negotiate a broader carve-out that would have preserved the rights of a future chapter 7 trustee or

negotiated other terms that would have preserved these claims, but they failed to do so.  The Court should enforce the parties' agreement embodied in the DIP Order.

22.    Finally, the Trustee argues in passing that Rule 25(c) allows it to pursue the substantive claims formerly asserted by the Committee.  Trustee Brief, pp. 12, 14.  "However, Rule 25(c) is a procedural vehicle not designed to create new relationships among parties to a suit. It involves a discretionary determination by the trial court to facilitate the conduct of the litigation. Thus, Rule 25 does not substantively determine what actions survive the transfer of an interest." *Citibank v. Grupo Cupley, Inc.*, 382 F.3d 29, 32 (1st Cir. 2009) (internal citations and quotation marks omitted); *see also* 28 U.S.C. 2702(b) (federal rules "shall not abridge, enlarge or modify any substantive right.").   Here, the substantive rights of all parties-in-interest, other than the Committee, were extinguished when the Investigation Period expired, and the Trustee cannot revive those substantive rights, through substitution, that were previously extinguished as to the Debtors.

23.    For the foregoing reasons, the Court should deny the Motion to Substitute.

**B.    The Refinancing Facility and the Sale-Leaseback Cannot Be Collapsed Into a Single Transaction with the Acquisition Facility.**

24.    As is common in fraudulent transfer litigation, the constituent elements of an LBO can be collapsed into a single transaction.  Here, that means only that the Acquisition Facility (provided by Bank of Montreal) and the transfer of $41.3 million to shareholders arguably could have been collapsed into a single transaction for purposes of fraudulent transfer litigation.  *See* Complaint, ¶ 86.

25.    There is no basis, however, to collapse the subsequent Refinancing Facility or the Sale-Leaseback into the LBO.  The LBO was complete upon the closing of the Acquisition

Facility, which was **never** conditioned upon the Refinancing Facility or the Sale-Leaseback. The Committee does not (and cannot) allege otherwise.

26.     Previously (years ago), the Court determined that "[b]ased on the Committee's allegations, the Court could conclude that CIT, Sun, Bank of Montreal, and Jevic were all *apprised of the overall goal—Sun's acquisition of Jevic through a highly leveraged buyout—*of each of these separate transactions in which the various parties were involved." *Official Committee of Unsecured Creditors v. The CIT Group/Business Credit, Inc. et al. (In re Jevic Holding Corp.),* 2011 WL 4345204 at \*7 (Bankr. D. Del. Sept. 15, 2011) (emphasis added). The Court found that the Committee has alleged that CIT had sufficient knowledge and notice of the LBO and that the Committee adequately alleged that the LBO, the Refinancing Facility, and the Sale-Leaseback "would not have occurred independently of each other." *Id.* Merely knowing about a potential transaction, and even expecting that it is "all *but certain*" to occur, is an insufficient basis to collapse transactions that are not conditioned upon each other or *certain* to occur together.

27.     Based on more recent and highly analogous case law, CIT respectfully submits the Court's prior conclusion in 2011 was incorrect and unsupported by any non-conclusory, factual allegation. For example, the Complaint does not (and could not) allege that the Acquisition Facility was conditioned upon the Refinancing Facility or that it would not have occurred "independently" because it was not conditioned upon an agreement to provide the Refinancing Facility. The Acquisition Facility did occur "independently" of the Refinancing Facility because the Acquisition Facility was not conditioned upon the Refinancing Facility.

28.     For good reason, Trustee fails to discuss (or even mention) the recent decision in *Marc S. Kirschner, as Litig. Trustee for the Tribune Litig. Trust v. Dennis J. Fitzsimmons (In re*

*Tribune Co. Fraudulent Conveyance Litig.*), 2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018), *reconsideration denied*, 2019 WL 549380 (S.D.N.Y. Feb. 12, 2019).

29.     In *Tribune*, although the parties "clearly knew about both steps of the LBO, and, in fact, anticipated that both steps would be consummated," it was "never certain that Step Two would occur" even though it was "highly likely to occur." *Tribune*, 2018 WL 6329139, at *9. Therefore, the District Court concluded that "Step One and Step Two of the LBO were independent transactions." *Id.*; *see also* CIT Brief, pp. 26–29.

30.     Here, the LBO was completed upon the closing of the Acquisition Facility. The subsequent Refinancing Facility was a separate transaction—regardless of whether it was expected (or even "highly likely" or "all but certain") at the time of the Acquisition Facility.

31.     The Complaint does not (and cannot allege) that the Acquisition Facility was dependent upon the Refinancing Facility. The Acquisition Facility closed without any condition or promise (let alone certainty) that there would be any refinancing—whether from CIT or any other lender. The Complaint does not (and cannot) allege otherwise. Accordingly, as a matter of law, the Acquisition and the Acquisition Facility (which constituted the LBO) should not be considered as a single transaction with the Refinancing Facility.

32.     The Court previously concluded in this case that the Complaint adequately alleged that the Acquisition Facility and the Refinancing Facility "would not have occurred independently of each other." *Jevic Holding Corp.*, 2011 WL 4345204, at *7. In fact, the Complaint contains nothing more than conclusory statements to support that assertion. The Acquisition Facility *did* occur independently of the Refinancing Facility because the Acquisition Facility was not conditioned upon the Refinancing Facility, and the Complaint does *not* allege otherwise.

Moreover, to say that the Refinancing Facility would not have occurred without the Acquisition Facility is a tautology. No refinancing occurs without the existence of a prior loan to *re*finance.

33.     There is even less of a basis to collapse the Sale-Leaseback into a single transaction with the Acquisition Facility. The Complaint does not (and cannot) allege that the Sale-Leaseback was *even contemplated* at the time of the Refinancing Facility, let alone at the time of the Acquisition Facility.

34.     It is ironic (and inconsistent) that the Trustee alleges that the Refinancing Facility and the Sale-Leaseback must be collapsed with the Acquisition Facility into a "single integrated transaction" while he simultaneously argues that the transfers to CIT "are not related to a security transaction" (the repurchase of the shareholders' stock as part of the LBO) for purposes of the section 546(e) defense. Trustee Brief, pp. 16 and 32.

35.     For the foregoing reasons, the Court should enter judgment on the pleadings in CIT's favor with respect to Counts 1-10 and Count 12 of the Complaint.

## C.     If the Transactions Are Collapsed, the Section 546(e) "Safe Harbor" Defense Requires Judgment in CIT's Favor on All Avoidance Claims.

i.     The Trustee's Argument that the 546(e) Safe Harbor Defense Does Not Apply to Claims of Actual Fraud Is Irrelevant Because the Complaint Does Not Allege Actual Fraud.

36.     The Trustee argues that CIT cannot assert the section 546(e) "safe harbor" because it is inapplicable to actual fraudulent transfer claims. Trustee Brief, pp. 16–17 (claiming that Counts 1, 2, 13, 14, 15, 16, and 17 of the Complaint assert claims for actual fraud under § 548(a)(1)(A)). However, the Complaint does not contain any claim to avoid an actual fraudulent transfer. Rather, the cited counts of the Complaint, some of which are not even directed at CIT, contain only allegations that the Debtors received less than "reasonably equivalent value." *See, e.g.*, Complaint, ¶¶ 139, 145, 226, 232, 238, 243, and 249. These allegations are governed by

section 548(a)(1)(B), which are covered by the safe harbor defense. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544, 545, 547, *548(a)(1)(B)*, and 548(b) of this title, the trustee may not avoid a transfer . . .") (emphasis added). As such, this argument is irrelevant.[5]

    ii.    <u>Section 546(e) Applies if the Transactions Are Collapsed.</u>

    37.    The Trustee's only other argument in opposition to CIT's assertion of the section 546(e) defense is that such defense is inapplicable to a "multi-step, collapsed transaction like the one at hand." Trustee Brief, p. 22. Even assuming, *arguendo,* that the Refinancing Facility and the Sale-Leaseback could be collapsed with the original Bank of Montreal Acquisition Facility into a single LBO transaction, the Third Circuit has repeatedly held that section 546(e) applies to transfers in connection with an LBO. *See Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 516 (3d Cir. 1999), *abrogated in part on other grounds*, *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018); *Brandt v. B.A. Capital Co. (In re Plassein Intl. Corp.)*, 590 F. 3d 252, 256 (3d Cir. 2009); *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 274 B.R. 71, 83-89 (D. Del. 2002) (applying section 546(e) to "collapsible" LBO transaction).[6] Indeed, it would be unfair in the extreme if the Trustee was able to collapse transactions for purposes of establishing a fraudulent transfer, while CIT was unable to assert section 546(e) with respect to the collapsed

---

[5] Moreover, even if the Complaint did contain claims for actual fraud under section 548(a)(1)(A), it would still fail because it does not "state with particularity the circumstances constituting fraud or mistake." Fed. R. Bankr. P. 7009 (incorporation Fed. R. Civ. P. 9). Even applying a liberal standard (which does not apply here because the Trustee has had substantial discovery to date), the allegations referenced in the Trustee's Brief do not contain any specific factual allegations of fraud by CIT, let alone enough to make a colorable claim of actual fraud. *See, e.g., In re Oakwood Homes Corp.,* 325 B.R. 696, 698-99 (Bankr. D. Del. 2005).

[6] The Trustee erroneously argues that *Hechinger* does not support CIT's argument that 546(e) is applicable to collapsed LBO transactions. Trustee Brief, p. 22, n. 10. The *Hechinger* Court expressly acknowledged "that the court in *Resorts International* found that section 546(e) is generally applicable to LBO transactions and that *Resorts International* is binding as direct controlling precedent on this court." *See Hechinger Inv. Co. of Del. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.)*, 274 B.R. 71, 86 (D. Del. 2002).

transactions.  Fortunately, that is not the law.  *See, e.g., Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, 2020 WL 1509447, at *8 (Bankr. D. Del. Mar. 30, 2020) ("Here, the Trustee took advantage of the collapsing doctrine when he identified the relevant transfers. . . .  Rather than focusing on the single step of the Restructuring . . ., the Trustee has linked the Restructuring's multi-steps together . . . .  This transfer, as framed by the Trustee using the collapsing doctrine, has served as the starting point for NML's section 546(e) defense, which has been applied using the facts and circumstances of the Restructuring as a whole.").

38.     To support his argument that section 546(e) is inapplicable to LBOs, the Trustee relies on *In re Mervyn's Holdings*, *LLC*, 426 B.R. 488 (Bankr. D. Del. 2010).  Trustee Brief, pp. 22–23.  The Trustee ignores both the facts of *Mervyn's* and the fact that it has not been followed with respect to its incorrect statement of the law regarding the applicability of section 546(e) in the context of collapsed transactions.

39.     In *Mervyn's*, the Court stated that, "as a general rule, section 546(e) does not apply to 'collapsed' transactions.'"  426 B.R. at 500.  The binding Third Circuit cases cited above disprove that proposition.  So does the more recent Bankruptcy Court decision in *DSI Renal Holdings*.  2020 WL 1509447, at *8 ("collapsing of the Restructuring's multiple integrated transactions does not preclude NML's use of the securities safe harbor").  If the transactions are collapsed, section 546(e) applies and bars the avoidance claims against CIT.  *See* CIT Brief, § D(i).

40.     Therefore, the Court should enter judgment in favor of CIT on Counts 1-10 and Count 12 of the Complaint.[7]

---

[7] The Trustee argues that the applicability of section 546(e) cannot be decided in the context of a motion for judgment on the pleadings.  Trustee Brief, p. 26.  The Court in *Mervyn's*, 426 B.R. 488, upon which the Trustee heavily relies, analyzed section 546(e) in the context of a motion to dismiss.  The Supreme Court in *Merit Management*, 138 S. Ct. 883, also analyzed the issue in the context of a motion for judgment on the pleadings.

**D.      The Allegations in the Complaint Unwittingly Evidence Reasonably Equivalent Value.**

      i.     The Trustee's Argument that the Court Already Held that the Complaint Adequately Alleges Lack of Reasonably Equivalent Value Is Irrelevant to CIT's Present Argument.

41.      The Trustee argues that this Court "has already acknowledged that, at least for pleading purposes, the Complaint adequately alleges the elements necessary to collapse the LBO Transactions." Trustee Brief, p. 31. Therefore, he argues, CIT cannot "re-raise this issue now." *Id.* CIT is not raising the same argument.

42.      CIT's *prior* argument regarding "reasonably equivalent value" focused on the exchange of value *solely* with respect to the Refinancing Facility (*e.g.,* loan proceeds in exchange for liens on the Debtors' assets). That argument holds true if the transactions are not collapsed.

43.      CIT's present argument is that, even assuming *arguendo* that the Acquisition Facility, the Refinancing Facility, and the Sale-Leaseback are collapsed into a single transaction, the *allegations in the Complaint* establish that the Debtors received reasonably equivalent value. Specifically, and as discussed below, although shareholders received $41 million in the LBO, the Debtors received more than $53 million in value by virtue of the waiver of intercompany claims.

      ii.     The Debtors Received Reasonably Equivalent Value.

44.      The Trustee asserts that CIT improperly focuses solely on the value exchanged in the Acquisition, rather than analyzing the value of the collapsed transactions "holistically." That is incorrect.

45.      In the CIT Brief, CIT addressed the exchange of value in the *Acquisition* because, absent the collapsing of the transactions, it is obvious that CIT provided reasonably equivalent value to the Debtors in the Refinancing Facility. Considering the Refinancing Facility in isolation,

CIT provided to the Debtor a $101.2 million credit facility ($85 million Revolver and a $16.2 million Term Loan), and the Debtor provided liens to CIT to secure the Debtors' borrowings under the Refinancing Facility. The liens only secured money borrowed by the Debtors. Focusing only on the Refinancing Facility, that such exchange involves reasonably equivalent value requires no discussion.

46.    However, the Court (in its opinion on CIT's motion to dismiss) determined that analyzing reasonably equivalent value focusing solely on the Refinancing Facility was not the proper analysis if the transactions are collapsed. *See Jevic Holding Corp.*, 2011 WL 4345204, at *9 ("CIT's argument does not take into account the [Complaint's] argument that when the transactions relating to the Jevic LBO are collapsed, the aggregate value of the obligation incurred and the transfers made by Jevic exceeds and is therefore not reasonably equivalent to the aggregate value that CIT provided to Jevic in return.").

47.    In the CIT Brief, CIT focuses on the value provided to the Debtors in connection with the *other* portion of the allegedly collapsible transaction—the Acquisition Facility. Of the $90 million in Acquisition Facility proceeds, $41.3 million was paid to the former shareholders. As explained in the CIT Brief, however, the *Complaint* establishes that the Debtors received reasonably equivalent value notwithstanding the payment to the former shareholders because—as the Complaint and the documents upon which it relies establish—the Debtors received a release of $53 million in intercompany claims. Viewed "holistically," the Debtors received reasonably equivalent value in both the Refinancing Facility transaction (loans for liens) *and* in the Acquisition Facility.[8]

---

[8] The Trustee also argues that "viewed as a whole, the purported cancellation of approximately $53 million in intercompany debt is far less than the value transferred to CIT in the LBO Transactions including securing more than $100 million of debt with the Debtors' collateral [sic] and the sale of $20 million in valuable real estate assets." Trustee Brief, p. 33. That assertion makes little sense as it ignores that CIT

48.     Therefore, the Court should enter judgment in favor of CIT on Counts 1-10 and Count 12 of the Complaint.

**E.     The Complaint Does Not Adequately Allege Equitable Subordination.**

49.     Recognizing that the "equitable subordination" claim cannot survive scrutiny applicable to claims against "non-insiders," the Trustee advances an argument so unsupported by the Complaint that the Committee did not even argue it.  The Trustee claims that "the Complaint sets forth a number of allegations against CIT which suggest that . . . CIT was, for purposes of an equitable subordination analysis, an insider."  Trustee Brief, p. 34.  This argument fails.

50.     The Complaint does not (nor could it) allege that CIT is an "insider." The Complaint contains no allegation of any control, let alone the "high level of control," that would support a finding that CIT was an "insider."  *See, e.g., Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse (In re Champion Enters., Inc.)*, 2010 WL 3522132, at *6 (Bankr. D. Del. Sept. 1, 2010) ("courts have refused to apply insider status absent a showing of a high level of control by the lender").  The Trustee's arguments that CIT, in enforcing its contractual remedies, "forced" the Sale-Leaseback and "was an integral part of the entire LBO Transaction and actively participated throughout the process" fall far short of the high level of control necessary to render CIT an "insider."  Trustee Brief, pp. 34-35.  If the Trustee's assertion were true, every lender exercising contractual remedies and every participant in an LBO would be considered an "insider."

---

provided a $101.2 million credit facility—and *loans* thereunder—in exchange for the liens granted to secure such loans.  The Debtors sold real estate to *pay back loans.*  The repayment of a loan in the amount lent plus interest is anything but a transaction lacking reasonably equivalent value.  The only element of the collapsed transaction that could subject the Refinancing Facility to an avoidance claim is the $41.2 million that was paid to former shareholders in connection with the Acquisition Facility.  The Debtors, however, received a $53 million reduction in debt as part of that transaction.

51.     As CIT is not an "insider," the Complaint must plead "more egregious conduct such as fraud, spoliation or overreaching."  *Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 412 (3d Cir. 2009).   Merely reshuffling allegations (which were already incorporated by reference into the claims) from the factual background section to the equitable subordination claim does not change the substance of the allegations.  *See Jevic Holding Corp.*, 2011 WL 4345204, at *14 ("the Committee has alleged only that CIT's conduct, *as it is described in the Committee's preceding claims*, warrants the equitable subordination of CIT's claims against the Debtors.   Based on such sparse allegations, however, the Court cannot conclude that the Committee has sufficiently alleged a claim for equitable subordination against CIT and will therefore dismiss the claim.) (citations omitted) (emphasis added).   The Committee's description of CIT's alleged conduct in the Complaint does not differ from the previously-dismissed claim.

52.     Accordingly, the Court should enter judgment in CIT's favor with respect to Count 11 of the Complaint.

**F.      CIT is Not Judicially Estopped From Arguing that The Administrative Claim Fund Should be Returned.**

53.     None of the requirements for judicial estoppel have been met here.  First, taking the position that the settlement was equitably moot is not "irreconcilably inconsistent" with arguing that the Supreme Court's mandate should be carried out fully before this litigation proceeds. Second, consummating the settlement was not done "in bad faith—i.e., with intent to play fast and loose with the court."  A litigant does not act in bad faith by not awaiting a "final order" before consummating a settlement approved by a lower court even if they had the right to do so.  Finally, allowing the Trustee to essentially seek a double recovery against CIT by not unwinding the settlement would be a maximum, not minim sanction.

54.     The Trustee argues that CIT should be barred from arguing "that [its] settlement contributions should be returned before the Trustee can pursue claims against [CIT]."  Trustee Brief, p. 36.  The Trustee relies upon CIT's statement that "[a]ny attempt to undo these transaction and events and return to the status quo that existed before the … Settlement Order and the parties consummated the Settlement Agreement would be virtually impossible" and that "it likely is impossible to put CIT, the Lender Group, and Sun back in the position they occupied before they relied on the unstayed Settlement Order."  *See Joint Brief in Support of Joint Motion of the Debtors, CIT, Sun Capital, and the Official Committee of Unsecured Creditors to Dismiss Appeal of Settlement Order as Equitably Moot*, *Czyzewski v. Jevic Holding Corp. (In re Jevic Holding Corp.)*, No. 13-104-SLR (D. Del. Nov. 21, 2013) (the "Equitable Mootness Brief") [Dkt. No. 15]; *see also* Trustee Brief, p. 37.

55.     "*Virtually* impossible" or "*likely* impossible" does not mean "impossible," or that CIT is barred from attempting to recover the Administrative Claim Fund.  Recovering those funds has proven to be a difficult task as the recipients of the funds have refused to return such funds, and the Trustee now disputes his obligation to restore CIT to its pre-settlement position.

56.     Moreover, as a matter of law, there is no bad faith if a party's prior position was not adopted or accepted by a court.  *See Montrose Medical Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir. 2001) ("we hold that a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency"); *Coast Auto. Grp, Ltd. v. VW Credit, Inc.*, 34 Fed. Appx. 818, 823 (3d Cir. 2002) (quoting *Montrose*).

57.     In any event, if anyone should be judicially estopped, it is the Trustee.  In another adversary proceeding pending before this Court, the Trustee claims that he has a superior right to keep funds recovered in such litigation.  The Trustee seeks to benefit from the vacated settlement

by keeping recovered funds while simultaneously pursuing claims against CIT that were released in exchange for such funds.  *That* is a basis for judicial estoppel.

## **CONCLUSION**

For the foregoing reasons, the Court should (i) deny the Motion to Substitute, (ii) enter judgment in CIT's favor with respect to all Counts of the Complaint and (iii) grant such further relief to CIT as is appropriate.

Dated:  May 28, 2020
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

*/s/ Kurt F. Gwynne*
Kurt F. Gwynne (No. 3951)
Katelin A. Morales (No. 6683)
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile:  (302) 778-7575
Email: kgwynne@reedsmith.com
        kmorales@reedsmith.com

Counsel for Defendant,
The CIT Group/Business Credit, Inc., as Agent
for itself and the other prepetition lenders