**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JEVIC HOLDING CORP., *et al.*[1] | Case No. 08-11006 (BLS) |
| Debtors. | |

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the bankruptcy estates of JEVIC HOLDING CORP., *et al.* | Adv. Pro. No. 08-51903 (BLS) |
| Plaintiff, | Re: Docket Nos. 121, 125, 130 |
| v. | |
| THE CIT GROUP/BUSINESS CREDIT, INC., in its capacity as Agent, *et al.* | |
| Defendants. | |

**OPINION**[2]

The following motions are before the Court in the above-referenced adversary proceeding: (i) Motion to Substitute Chapter 7 Trustee as Real Party in Interest,[3] (ii) Motion of Sun Capital for Judgment on the Pleadings,[4] and (iii) Motion of the CIT Group/Business Credit, Inc., as Agent, for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c).[5]  Briefing is completed, and on February

---

[1] The Debtors in this case are Jevic Holding Corp. ("JHC"), Creek Road Properties, LLC, and Jevic Transportation, Inc. ("Jevic") (collectively, the "Debtors").

[2] This Opinion constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. This Court has jurisdiction to decide this Motion pursuant to 28 U.S.C. § 157 and §1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (K).

[3] Adv. D.I. 121 (the "Motion to Substitute").

[4] Adv. D.I. 125 (the "Sun Motion").

[5] Adv. D.I. 130 (the "CIT Motion").  The Sun Motion and the CIT Motion are referred to jointly herein as the "CIT/Sun Motions for Judgment on the Pleadings."

22, 2021, the Court heard oral argument on the motions. For the reasons set forth herein, the Motion to Substitute will be denied and the CIT/Sun Motions for Judgment on the Pleadings will be granted, in part, and denied, in part.

BACKGROUND

### The LBO Allegations

Jevic was a trucking business founded in 1981.[6] The Complaint alleges that Sun acquired Jevic through a leveraged buyout (an "LBO").[7] On June 30, 2006, the Bank of Montreal provided JHC (an investment vehicle wholly owned by Sun) with a $90 million loan (the "Acquisition Loan") that enabled JHC to acquire Jevic.[8] The Acquisition Loan was (i) evidenced by a demand note, (ii) guaranteed by Sun, and (iii) secured by all of the Debtors' assets.[9]

On July 28, 2006, CIT (for itself and as agent for the lending group) provided Jevic (as borrower) with an $85 million Revolver and a $16.2 million Term Loan, for a total loan facility of $101.2 million, inclusive of the payment of $1.5 million of direct transaction costs (the "Financing Agreement" or the "Refinancing").[10]

By September 30, 2006 - - just two months after funding the Refinancing - - CIT declared a default under the Financing Agreement.[11] Jevic faced liquidity

---

[6] The Second Amended Complaint and Objection of Claims (Adv. D.I. 43) (the "Complaint") ¶ 20. The Complaint was filed on October 7, 2011 against CIT Group/Business Credit, Inc., in its capacity as Agent ("CIT") and Sun Capital Partners, IV, LP ("Sun IV"), Sun Capital Partners Management IV, LLC ("Sun Management"), and Sun Capital Partners, Inc. ("Sun Partners") (Sun IV, Sun Management, and Sun Partners are referred to collectively herein as "Sun").

[7] Complaint ¶ 18.

[8] Complaint ¶ 46.

[9] Complaint ¶ 49.

[10] Complaint ¶ 76.

[11] Complaint ¶ 101.

problems for the balance of the year.[12]   CIT, Jevic and Sun negotiated an amendment to the Financing Agreement that was executed on January 16, 2007.[13] About the same time, Sun caused Jevic to complete a "Sale-Leaseback" deal by selling certain real property and simultaneously entering into 20-year leases with the new owners of the properties.[14]  The properties were sold for approximately $20 million and the net proceeds were used to (i) pay off the $16.2 million Term Loan, (ii) pay down the Revolver by $3 million, and (iii) pay transaction fees in the amount of $700,000.[15]

Jevic continued to be in default under the Financing Agreement and on January 8, 2008, CIT and the Debtors entered into a Forbearance Agreement and the Third Amendment to the Financing Agreement.[16]

### The Bankruptcy

On May 20, 2008, the Debtors filed Chapter 11 bankruptcy petitions in this Court and the Official Committee of Unsecured Creditors (the "Committee") was appointed shortly thereafter.  On June 20, 2008, the Court granted final approval of the Debtors' post-petition financing pursuant to the *Final Order (I) Authorizing Debtor-in-Possession to Obtain Senior Debtor in Possession Financing; (II) Granting Liens, Security Interests, and Superpriority Status; (III) Authorizing Use of Cash Collateral; and (IV) Affording Adequate Protection to Prepetition Lenders* (the

---

[12] Complaint ¶ 102.
[13] Complaint ¶ 103.
[14] Complaint ¶ 114.
[15] Complaint ¶ 116.
[16] Complaint ¶

"Final DIP Order").[17]  CIT, as agent for itself and other lenders, was the senior DIP financing agent.  As discussed in more detail below, in the Final DIP Order, the Debtors waived their right to challenge the Senior DIP Lenders' claims and liens or to assert any claims against them, subject to the rights of other parties in interest to assert timely claims within the applicable challenge period.[18]  The Final DIP Order also provided that the stipulations and admissions in the Order were "binding upon the Debtors and any successor thereto (including without limitation any Chapter 7 or Chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances."[19]

### *The Adversary Proceeding*

On December 31, 2008, the Committee filed an adversary proceeding against CIT, as agent for itself and the other lenders (the "Lender Group"),[20] alleging claims against the Lender Group relating to the pre-bankruptcy LBO and subsequent refinancing of the debt incurred in relation to the LBO (the "LBO Litigation").

On January 30, 2009, CIT filed a motion to dismiss the Committee's complaint[21] and the Committee subsequently amended the original complaint to join the Sun entities as defendants.

The Bankruptcy Court granted in part and denied in part CIT's motion to dismiss, by denying dismissal of the claims brought under Bankruptcy Code §§ 547,

---

[17] Main Case D.I. 118.

[18] Final DIP Order ¶¶ 38, 39.

[19] Final DIP Order ¶ 60.

[20] The Lender Group includes CIT, BMO Capital Markets Financing, LaSalle Bank Midwest National Association, PNC Bank, N.A. and Wachovia Bank, National Association.

[21] Adv. D.I. 5.

548 and 550, but dismissing the Committee's remaining claims.[22] After entry of the Dismissal Order, the Committee filed the *Second Amended Complaint and Objection to Claims* asserting thirty-four causes of action.

After a mediation ordered by the Court, the Debtors, the Committee, Sun, and CIT entered into a comprehensive Settlement Agreement and Release (the "Settlement Agreement").  On December 4, 2012, over the objection of certain former employees of the Debtors who held priority claims (the "WARN Plaintiffs"), the Bankruptcy Court entered an order approving the Settlement Agreement (the "Approval Order").[23]  The WARN Plaintiffs appealed the Approval Order.[24]

The WARN Plaintiffs' request for a stay pending appeal was denied by the Bankruptcy Court.[25] The WARN Plaintiffs did not challenge the denial, nor did they further seek a stay pending appeal from the District Court.[26]  After years of appeals, the matter reached the United States Supreme Court.  The Supreme Court reversed the Third Circuit's affirmance of the Approval Order, holding that "[a] distribution scheme ordered in connection with the dismissal of a Chapter 11 case cannot, without the consent of the affected parties, deviate from the basic priority rules that

---

[22] *Off'l Comm. of Unsecured Creditors v. The CIT Group/Business Credit, Inc. (In re Jevic Holding Corp.)*, 2011 WL 4345204, *1, *14 (Bankr. D. Del. Sept. 15, 2011) (the "Dismissal Order").

[23] Main Case D.I. 1520.

[24] Main Case D.I. 1539.

[25] Main Case D.I. 1567.

[26] As a courtesy to the district court, the Bankruptcy Court instructed the Debtors to refrain from consummating the Settlement Agreement for ten to fifteen days to give the WARN Plaintiffs an opportunity to challenge the denial of the stay pending appeal. The WARN Plaintiffs did not challenge the denial and did not further seek a stay from the District Court. *Czyzewki v. Jevic Holding Corp. (In re Jevic Holding Corp.)*, 2014 WL 268613, *2 (D. Del. 2014), *vacated and remanded by* 688 Fed. App'x 166 (3d Cir. May 9, 2017).

apply under the primary mechanisms the Code establishes for final distributions of estate value in business bankruptcies."[27]

### Remand and Conversion of the Cases to Chapter 7

After the reversal by the Supreme Court, the matter was remanded to the Third Circuit and, ultimately, to this Court and the Approval Order was vacated.[28] On May 17, 2017, the Chapter 11 case of JHC was reopened and a status conference was scheduled.[29] The Bankruptcy Court referred the parties to mediation, which was not successful.

The WARN Plaintiffs filed a motion for an order (a) allowing their New Jersey WARN Act Claims, and (b) disallowing the claims of creditors that received avoidable post-petition transfers pursuant to the structured dismissal settlement.[30] The Debtors, the Creditors' Committee, CIT, and Sun all filed objections (or joinders to the objections) to the WARN Plaintiff's motion.[31]

Meanwhile, the Debtors, the Creditors' Committee, CIT and Sun filed a motion under Bankruptcy Rule 9019 to approve an amended and restated settlement agreement, which the moving parties argued was "consistent with the Supreme Court's ruling, [by eliminating] the 'class skipping' component of the

---

[27] *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 978, 197 L.Ed.2d 398 (2017).

[28] *Off'l Comm. of Unsecured Creditors v. CIT Group/Business Credit Inc. (In re Jevic Holding Corp.)*, 688 Fed. App'x 166 (3d Cir. May 9, 2017) ("Upon consideration of the opinion of the Supreme Court, it is hereby ORDERED and ADJUDGED that the judgment of the United States District Court for the District of Delaware is hereby VACATED and the matter is REMANDED to the District Court with direction to VACATE the judgment of the U.S. Bankruptcy Court for the District of Delaware and REMAND the matter to the Bankruptcy Court for further proceedings."). *See also* Main Case D.I. 1759.

[29] Main Case D.I. 1760.

[30] Main Case D.I. 1770.

[31] Main Case D.I.s 1773, 1776, 1777, and 1779.

settlement and thereby plac[ing] the WARN Plaintiffs in the economic position they would have enjoyed if they had allowed claims and shared in the proceeds of the Original Settlement Agreement" (the "Settlement Motion.") [32]  The WARN Plaintiffs objected to the Settlement Motion [33] and filed a motion to convert the Chapter 11 case to a case under Chapter 7 (the "Motion to Convert"). [34]  CIT filed an objection to the Motion to Convert, which was joined by the Debtors and Sun. [35]

After hearings on May 14, 2018 and May 21, 2018, the Court entered an Order denying the Settlement Motion and granting the Motion to Convert. [36]  On June 5, 2018, George L. Miller was appointed as the Chapter 7 trustee. [37]

On April 12, 2019, the Trustee filed the Motion to Substitute. By this Motion, the Trustee seeks to substitute himself for the now-dissolved Creditors' Committee as plaintiff in the suit against CIT and Sun.  CIT and Sun each filed an objection to the Motion to Substitute combined with their respective motions for judgment on the pleadings.  The Court heard oral argument on the motions on February 22, 2021.

---

[32] Main Case D.I. 1772, ¶ 1.

[33] Main Case D.I. 1778.

[34] Main Case D.I. 1782.

[35] Main Case D.I.s 1788, 1790, and 1791.

[36] Main Case D.I. 1805.  The Motion to Convert was granted with respect to the bankruptcy case of JHC.  On October 10, 2018, the Court reopened the Debtors' remaining bankruptcy cases and converted them to Chapter 7 cases. The Trustee was appointed to those cases shortly thereafter.

[37] Main Case D.I. 1807.

## DISCUSSION

1. <u>Motion to Substitute</u>

*The parties' arguments*

The Trustee moves under Fed.R.Civ.P. 25(c) to be substituted as the plaintiff in this adversary proceeding, asserting that he is the "real party in interest" and that his interest in recovering assets for the Debtors' estates is perfectly aligned with those of the Committee that filed the adversary complaint challenging the Defendants' claims and liens.

CIT and Sun argue in response that the Chapter 7 Trustee succeeds only to the rights, claims and defenses of the Debtors, not the Committee. Therefore, CIT and Sun assert that the Trustee cannot be substituted as the plaintiff in this proceeding because, years ago, the Debtors waived their right to challenge liens and assert claims against Lender Group in the Final DIP Order. [38]

The Trustee replies that the Motion to Substitute does not rely on a transfer of the Committee's interests because the adversary proceeding claims belong to the Debtors' estates and, upon conversion to Chapter 7, those claims vested in the Trustee. The Trustee also argues that the Debtors' waiver of claims in the Final DIP Order was subject to the right of parties in interest to pursue challenges during the investigation period. Since an interested party - - the Committee - - filed a

---

[38] Sun argues that it is subrogated to the first lien rights of CIT and the Lender Group pursuant to their guarantee of the indebtedness as part of the January 2008 forbearance agreement. The Trustee disputes Sun's position.

proceeding during the investigation period, the Trustee asserts that he succeeds to that litigation as a party in interest.

*Substitution Motion – Discussion*

As noted, the Trustee seeks to substitute himself as plaintiff in the place of the Committee in the LBO Litigation pursuant to Fed.R.Civ.P. 25 and Fed.R.Bankr.P. 7025. Rule 25(c) provides in pertinent part that:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

However, Rule 25(c) "applies only if substantive law allows the action to continue upon dissolution of a party."[39]

"It is well-established that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by prior actions of the debtor-in-possession to the extent approved by the court."[40] "Section 1107(a) of the Bankruptcy Code grants the debtor-in-possession the powers of a Chapter 11 trustee including 'the authority

---

[39] *In re Constellation Enter. LLC*, 587 B.R. 275, 286 (D. Del 2018).

[40] *Hill v. Akamai Tech., Inc. (In re MS55, Inc.)*, 477 F.3d 1131, 1135 (10th Cir. 2007) (citing *Paul v. Monts*, 906 F.2d 1468, 1473 (10th Cir. 1990) *See also Angell v Meherrin Agricultural & Chem. Co (In re Tanglewood Farms, Inc. of Elizabeth City)*, 2013 WL 1829910, *8 (Bankr. E.D.N.C. May 1, 2013) (citing cases, including *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir. 1992) (holding that the debtor-in-possession's agreement to a stalking-horse bid binds a subsequently appointed Chapter 7 trustee); *Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.)*, 657 F.2d 1076, 1080 (9th Cir. 1981) (holding that a subsequently appointed trustee could not contest a lien on lawsuit proceeds previously granted by the debtor-in-possession and authorized by the court)). The Third Circuit Court of Appeals recognized this truism back in 1981 in *Matter of Gebco Inv. Corp.*, 641 F.2d 143, 146 (3d Cir. 1981) ("When asserting a right of action against another … the trustee has no greater rights than the bankrupt had … 'any defense, legal or equitable, which might have been raised against the bankrupt may be raised against the trustee.'").

to bring - - and waive the right to bring - - avoidance actions.'"[41]    Courts have

recognized that:

> To hold that ... [the actions of the debtor-in-possession are] not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor in possession to conduct its business because it would discourage third parties from dealing with the debtor in possession for fear that the court would later appoint a trustee and declare that the actions [previously] taken by the debtor-in-possession are invalid and not binding on the trustee.[42]

In this case, it is undisputed that the Final DIP Order included the Debtors'

stipulation and agreement to the validity of the Prepetition Indebtedness and

Liens,[43] and the Debtors' waiver of claims against CIT and the Lender Group as

follows:

> In consideration of the Senior DIP Agent's and the Senior DIP Lenders' agreement to provide the Senior DIP Financing pursuant to the Senior DIP Financing Documents, and the Prepetition Agent's and the Prepetition Lenders' consent to the use by the Debtors of their Cash Collateral and to the protections granted to the Senior DIP Agent and the Senior DIP Lenders in the Senior DIP Financing Documents, each of the Debtors has waived and shall be barred from (i) challenging the amount, validity, extent, perfection, or priority of or seeking to set aside, avoid, offset or subordinate any of the Prepetition Indebtedness or any Liens or security interests of the Prepetition Agent and/or the Prepetition Lenders in the Prepetition Collateral, and (ii) asserting any other claims or causes of action against the Prepetition Agent and/or the Prepetition Lenders including, without limitation, claims

---

[41] *Tanglewood Farms,* 2013 WL 1829910, *8 (quoting *Terlecky v. Peoples Bank, N.A. (In re Amerigraph, LLC),* 456 349, 356 (Bankr. S.D. Ohio 2011)). *See also MS55,* 477 F.3d at 1134 ("Under the bankruptcy code, a debtor-in-possession has the powers of a trustee [§ 1107(a)], and, as such, the authority to bring avoidance actions.").

[42] *Tanglewood Farms,* 2013 WL 1829910 at *9 (quoting *In re Philadelphia Athletic Club, Inc.,* 17 B.R. 345, 347 (Bankr. E.D. Pa. 1982). *See also Armstrong,* 964 F.2d at 801 ("Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee."); *Off. Comm. of Unsecured Creditors v. Belgravia Paper Co. (In re Great N. Paper, Inc.),* 299 B.R. 1, 7 (D. Maine 2003) ("Entities will not deal with debtors-in-possession if their agreements are not binding.").

[43] Final DIP Order, ¶ 38.

for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the Bankruptcy Code.[44]

The Final DIP Order also provided that "[t]he stipulations and admissions contained in this Final Order shall be binding upon the Debtors and any successor thereto (including without limitation any Chapter 7 or Chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances."[45]

The Trustee, however, argues that his ability to pursue the adversary proceeding against the Defendants arises from language in the Final DIP Order granting interested parties an investigation period to challenge the Lender Group's claims and liens:

> Notwithstanding … anything in the Senior DIP Financing Documents to the contrary, including the Debtors' acknowledgements, representations, stipulations, and releases herein solely as they relate to the Prepetition Agent, the Prepetition Lenders and/or the Prepetition Financing, the Committee or any party-in-interest, including a Chapter 7 or Chapter 11 trustee appointed or elected during the Investigation Period (defined below), shall be permitted to investigate (subject to the limitation set forth herein) and challenge, in accordance with the Federal Rules of Bankruptcy Procedure, the validity, enforceability, priority, perfection, or amount of the Prepetition Indebtedness or Prepetition Lenders' liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Prepetition Agent and/or a Prepetition Lender on behalf of the Debtors' estates, which shall be filed no later than 75 days from the Petition Date or with respect to the Committee not later than 75 days after the date of the appointment of the Committee (the "Investigation Period").[46]

The Trustee relies on *In re S. Rachles, Inc.,* which allowed a Chapter 7 trustee to be substituted in the place of the creditors' committee in an adversary proceeding

---

[44] Final DIP Order, ¶ 39.
[45] Final DIP Order, ¶ 60.
[46] Final DIP Order, ¶ 39.

filed pre-conversion against former officers and shareholders to recover fraudulent transfers.[47]   The *Rachles* committee filed the adversary without seeking prior authorization from the court because the statute of limitations was about to run.[48] Post-conversion, the Chapter 7 trustee filed a separate adversary complaint for the same claims.[49]   The Chapter 7 trustee then sought to join the cases under Bankruptcy Rule 7042.  The *Rachles* Court decided it would be better to substitute the Chapter 7 trustee for the committee in the first adversary under Rule 7025 rather than try to merge the adversaries, writing:

> One of the examples cited in the Editors' Comment to Bankruptcy Rule 7025 to illustrate an appropriate substitution of parties is the substitution of the Chapter 7 trustee for the debtor-in-possession when a case converts from Chapter 11 to Chapter 7. Norton Bankr. Rules Pamphlet, Editors' Comment to Rule 7025, at 515 (1990–91 ed.). Upon conversion and appointment, a trustee steps into the shoes of the debtor-in-possession with respect to all rights, responsibilities and liabilities. Logically then, it is entirely appropriate for the Chapter 7 Trustee to be substituted as plaintiff in the instant adversary proceeding in the place of the Creditors' Committee which initially filed the adversary complaint on behalf of the Debtor and this estate.[50]

CIT and Sun argue that the *Rachles* case is not analogous here for the important reason that it did not involve a pre-conversion waiver of claims by the debtor.[51]  Instead, the Defendants claim that the Tenth Circuit Court of Appeals'

---

[47] *In re S. Rachles, Inc.*, 131 B.R. 782 (Bankr. D.N.J. 1991).

[48] The *Rachles* committee filed a motion for authorization simultaneously with the complaint, but the case was converted before the motion was heard. *Rachles*, 131 B.R. at 784.

[49] *Id.*

[50] *Id.* at 785.

[51] The Trustee also relies upon *In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006), but that case does not support the Trustee's position.  The *World Health* Court noted that the debtor stipulated in a debtor-in-possession financing order to the allowability and perfection of the lender's pre-petition secured claim and that "such stipulations are binding on their successors and assigns, including any bankruptcy trustee." *Id.* at 293.  The committee was granted a period of

decision in *Hill v. Akamai Tech., Inc. (In re MS55, Inc.)*[52] is on point.  The *MS55* debtor entered into a DIP financing order providing that the "Debtor's estate … [and] debtor … shall be forever barred from asserting any and all claims on any basis or theory against the secured creditors."[53]  The same order, however, granted the right to investigate and challenge the lender's claims to the unsecured creditors committee.[54]  The *MS55* committee did not file any lawsuit prior to conversion of the case.  Post-conversion, the Chapter 7 trustee filed an avoidance action against a secured creditor, and the creditor moved for summary judgment arguing that the claim was barred by the terms of the financing order.  The Tenth Circuit held that the Chapter 7 trustee's rights to pursue avoidance actions are derivative of the debtor's rights; so, the trustee was barred from bringing an avoidance action against the secured creditor because the court-approved financing order barred the debtor from doing so.[55]

---

time to investigate and challenge the pre-petition indebtedness.  *Id*.  During an extension to the challenge period, the debtor, the lender, and the committee entered into a letter agreement providing for a global settlement of the disputes between the parties.  *Id.* at 294.  While a Rule 9019 Motion for approval of the settlement was pending, the U.S. Trustee filed a motion to appoint a Chapter 11 trustee or convert the case to Chapter 7.  *Id.* at 295.  The Court considered and approved the Letter Agreement settlement, then (in the same hearing) converted the case to Chapter 7.  The Court noted " [u]pon conversion, the Committee will no longer exist.  The Chapter 7 trustee will then have the right to pursue causes of action on behalf of the estate against the Debtors' officers directors, and professionals."  *Id.* at 303.  This case does *not* support substituting a Chapter 7 trustee in a committee's pre-conversion lawsuit because in *World Health* (i) there was no pending lawsuit, and (ii) there was no waiver of claims by the debtor against officers, directors, and professionals.

[52] *Hill v. Akamai Tech., Inc. (In re MS55, Inc.)*, 477 F.3d 1131 (10th Cir. 2007).

[53] *Id*. at 1135.

[54] *Id*. at 1133.  The *MS55* committee was permitted to challenge the secured creditor's claims until "the first date set by the Court for objections to confirmation of a reorganization plan …," which did not occur pre-conversion.  *Id*.

[55] *Id*. at 1140.

The *MS55* case is more analogous to the case at hand than *Rachles*.  But the Trustee here argues that *MS55* is not a blanket prohibition preventing Chapter 7 trustees from asserting claims first raised by a creditor's committee; instead, the Trustee asserts that *MS55* instructs that a Chapter 7 trustee is bound by the terms of the relevant financing order.  The Trustee then argues that, in this case, the Debtors' stipulations and waivers in the Final DIP Order were always subject to the rights of *parties in interest*, including a Chapter 7 trustee, to bring a challenge. Unlike the committee in *MS55*, which failed to file any claims pre-conversion, the Committee in this case asserted (and, the Trustee argues, preserved) the estate's claims by filing the adversary proceeding within the extended challenge period. Although the Committee dissolved upon conversion, the Chapter 7 Trustee contends that he is the proper party in interest to continue the pre-conversion adversary proceeding.

The Trustee correctly argues that the terms of the financing order are paramount in this analysis.  But the Trustee's argument ultimately fails because it disregards key language in the relevant provision of the Final DIP Order.  The terms of the challenge period carve out are very specific as to *who* may assert a challenge and *when* the challenge may be asserted.  The provision provides that *any party in interest* may file an action *no later than 75 days from the Petition Date* (the "Interested Party Investigation Period"). The provision also allows *the Committee* to file an action no later than *75 days after the date of the appointment of the Committee* (the "Committee Investigation Period").   The current Trustee was not

appointed during the defined Interested Party Investigation Period and, therefore, cannot assert a challenge. Once the 75-day Interested Party Investigation Period passed, a party in interest's right to challenge the Prepetition Indebtedness ended, including any right of a Chapter 7 Trustee appointed during that period.

The Committee filed an adversary proceeding during the Committee Investigation Period.[56]  But upon conversion to Chapter 7, the Committee was dissolved.[57]  When considering the extent of the release in the *MS55* financing order, the Tenth Circuit noted:

> [T]he real question is not whether a full release exists, but rather *who* retained any existing right to bring an avoidance action. It is well established that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by the prior actions of the debtor-in-possession to the extent approved by the court. Even the trustee concedes he is 'bound by court approved stipulations of a [debtor-in-possession] prior to conversion.  The creditors committee may have retained a right of action, but that does not remove the existing bar against the debtor-in-possession or, post-conversion, the trustee enforcing those rights.[58]

Here, the Final DIP Order provided parties in interest with a limited right to file causes of action against the Lender Group.  That right expired and was separate from the Committee's right.  The language of the Final DIP Order granted rights to the Committee that are not transferable to the  Chapter 7 Trustee, who is bound by the provisions in the Final DIP Order applicable to the Debtors.

The Trustee also attempts to distinguish *MS55* by pointing out that the *MS55* financing order barred both *the debtor's estate* and the debtor from pursuing

---

[56] The Committee and CIT entered into a Stipulation, that was approved by the Court, extending the Committee Challenge Period to December 31, 2008.  Main Case D.I. 333.

[57] *Constellation Enter.*,  587 B.R. at 281-82 (citing cases).

[58] *Id.* at 1135-36 (citations omitted).

any causes of action against the secured creditors. The Trustee argues that his ability to assert the claims in the adversary proceeding does not depend upon a transfer of rights or interests from the Committee. Rather, those claims belong *to the Debtors' estates* and the Trustee asserts that the relevant transfer for purposes of Rule 25(c) is the vesting of the estate's avoidance powers in the Trustee upon conversion.

The Trustee's distinction is without merit  The Committee's right to assert claims against the Defendants is derivative of the rights of the *Debtors*.[59]  "As a matter of law, a creditors' committee does not have its own right to bring avoidance actions … [b]ut courts have 'permitted creditors' committees to bring actions *in the name of the debtor,'* usually only 'in connection with actions against insiders or other persons that the debtor in possession has refused or is reluctant to sue.'"[60]  The claims asserted by the Committee are derivative of the Debtors because the Debtors granted those rights to the Committee in the Final DIP Order.[61]  After conversion, a Chapter 7 trustee could pursue the claims in the name of the debtor ***except*** when the debtor bars itself, and its successor, from asserting those rights.[62]

The *MS55* Court distinguished *Rachles*, stating:

*Rachles* should not be read to stand for a proposition that the creditors' committee has independent avoidance claims of its own to which the

---

[59] *MS55*, 477 F.3d at 1138 ("[W]e do not quarrel that the right of the creditors' committee to bring an avoidance action is derivative").

[60] *MS55*, 477 F.3d at 1139 (citing *Off'l Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 563 (3d Cir. 2003) (stating that "§ 1103(c)(5) does not confer the sort of blanket authority necessary for the Committee independently to initiate an adversarial proceeding, including one under § 544(b)"); and quoting COLLIER ON BANKRUPTCY ¶ 1103.05[6][a] (emphasis added)).

[61] *MS55*, 477 F.3d at 1140.

[62] *Id.*

trustee inevitably succeeds. The trustee in *Rachles* was not succeeding to the independent rights of the creditors' committee, but rather joining the committee's already initiated derivative claim of the debtor's rights in a case *where the trustee was not otherwise barred by previous arrangements made by the debtor-in-possession.*[63]

The *MS55* Court concluded its analysis as follows:

In sum, the only rights a trustee inherits from a creditors' committee to bring an avoidance action are derivative of the debtor's rights. In this case, the trustee is barred from acting on those derivative rights because the debtor-in-possession was barred in the financing order. The derivative rights exist like a sword in a stone, but there is no Arthur to claim them.[64]

This conclusion is equally applicable here. The Trustee succeeds to the rights of the Debtors and is bound by the stipulations, admissions and waivers made by the Debtors pre-conversion. The language of the Final DIP Order provided that the Debtors' stipulations and admissions were binding upon any successor to the Debtors *including a Chapter 7 trustee in all circumstances.*[65] The meaning of that language is clear. Allowing the Trustee to pursue the LBO litigation denies any legal consequence to the very specific language in the Final DIP Order. The Trustee's Motion to Substitute must be denied.

*Sun's subrogation rights*

The Trustee argues that the stipulations and waivers made by the Debtors in the Final DIP Order do not apply to Sun because paragraph 39 of the Final DIP Order addresses causes of action against "the Prepetition Agent and/or the Prepetition Lenders." The Trustee asserts that Sun is neither a Prepetition Lender

---

[63] *MS55*, 477 F.3d at 1139 (emphasis added).
[64] *Id.* at 1140 (emphasis in original).
[65] Final DIP Order, ¶ 60 (emphasis added).

nor a Prepetition Agent as defined in the Final DIP Order.  The Trustee also argues that seven months after the Court entered the Final DIP Order, the Debtors and the Committee stipulated that the Committee could "assert, on behalf of the Debtors' estates, any and all claims of the Debtors' estates against Sun . . . ."[66]

In response, Sun argues that it has subrogation rights stemming "from the prepetition Guaranty executed [by Sun] in connection with the Forbearance Agreement, which, in exchange for an infusion of $2 million to the Debtors, effectively made Sun Capital a last-out lender to the Prepetition Financing."[67]  Sun argues that, under New York law (which governs the Guaranty) subrogation permits the person who paid a debt to "step into the shoes of the person paid and acquire his rights as against the one whose debt was discharged."[68]   New York courts recognize that "[a] subrogee acquires all rights, defenses and remedies of the subrogor and is subject to any claims or defenses which may be raised against the subrogor."[69]

As a subrogee of the rights of CIT, Sun receives the protection of the language in the Final DIP Order, which provided that:

> each of the Debtors has waived and shall be barred from (i) challenging the amount, validity, extent, perfection, or priority of or seeking to set

---

[66] The Order Approving Stipulation and Order Authorizing Official Committee of Unsecured Creditors to Commence Litigation Against (1) Sun Capital IV LP and Its Affiliates and (2) the Debtors' Present and Former Officers (the "Sun Stipulation"), Main Case D.I. 434, ¶ 2.

[67] Sun Reply Br., D.I. 139, ¶ 20.

[68] *Salzman v. Holiday Inns, Inc.,* 48 A.D.2d 258, 262 (N.Y. App. Div. 1975) (citing 57 NY Jur., Subrogation, § 1; Restatement (First) of Restitution § 162 (1937)). *See also Frescati Shipping Co., Ltd.*, 886 F.3d 291, 309 (3d Cir. 2018) ("Subrogation is not unusual; in general terms it 'simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party.")

[69] *Peerless Ins. Co. v Michael Beshara, Inc.*, 903 N.Y.S.2d 833, 75 A.D.3d 733, 735-36 (N.Y. App. Div. July 01, 2010).

aside, avoid, offset or subordinate any of the Prepetition Indebtedness or any Liens or security interests of the Prepetition Agent and/or the Prepetition Lenders in the Prepetition Collateral, and (ii) asserting any other claims or causes of action against the Prepetition Agent and/or the Prepetition Lenders including, without limitation, claims for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the Bankruptcy Code.[70]

The Adversary Complaint asserts claims against Sun pursuant to Bankruptcy Code §§ 548 and 550 to avoid the liens and payments assigned or made to Sun based on the Guaranty, and to subordinate Sun's claims pursuant to Bankruptcy Code § 510. The Final DIP Order prevents the Debtors - - and the Trustee as their successor - - from challenging the Prepetition Indebtedness, the Liens or security interests in the Prepetition Collateral. Thus, Sun is protected by its subrogee status.

2. <u>The CIT Motion and Sun Motion for Judgment on the Pleadings</u>

*The Trustee cannot assert claims in the adversary proceeding until the parties have been returned to status quo ante*

Even if the Debtors' waivers in the Final DIP Order do not apply to the Trustee, the Defendants argue in the Motions for Judgment on the Pleadings that the Trustee is also barred from asserting the Adversary Complaint's claims until the Settlement Agreement is completely unwound and the parties are restored to their respective pre-settlement positions. In other words, CIT's and Sun's settlement payments must be returned to them before the Trustee can assert the claims.[71]

---

[70] Final DIP Order, ¶ 39.
[71] The December 4, 2012 Order approving the Settlement Agreement (Main Case D.I. 1520 (the "Approval Order") provided that, within ten days after the Effective Date of the Settlement

CIT and Sun point out that the U.S. Supreme Court long ago recognized that parties to a settlement agreement that has been vacated on appeal should be restored to the pre-settlement economic positions.[72]  More recently, courts have determined that "litigants seeking to vacate settlement agreements must disgorge any monetary benefits gained as a result of the agreement.").[73]

The Trustee argues that CIT and Sun should be judicially estopped from requesting a return of the settlement payments, claiming that the Defendants' request is inconsistent with their equitable mootness argument in the previous appeal.  The Trustee asserts the Defendants' litigation strategy involved paying the settlement amounts prior to getting a final order so they could argue on appeal  that it would be virtually impossible to get those settlement payments returned. Now that the Approval Order has been vacated, the Trustee argues that the Defendants' change in position (i.e., requesting the return of the settlement payments) shows bad faith.

---

Agreement, CIT would pay the Debtors $2 million dollars (Approval Order, ¶ 4(a)) and Sun would release its lien and security interest in the cash and other assets of the Debtors' estate in an amount equal to $2 million dollars, plus at least $200,000 of accrued and unpaid interest and at least $250,000 in fees and costs incurred as of May 31, 2012 (Settlement Agreement ¶3 (D.I. 1346-2).  The Approval Order states that Sun would assign its "lien on the estates' remaining assets to a liquidating trust established by the Debtors . . . pursuant to the Settlement Agreement, for the exclusive benefit of the Debtors' unsecured creditors." Approval Order ¶ 11.

[72] *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.,* 249 U.S. 134, 145 (1919) ("a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of reversal, to be restored by his adversary to that which he has lost thereby");  *See Also Nw. Fuel Co v. Brock*, 139 U.S. 216, 219 (1891).

[73] *Nance v. NYPD*, 31 F. App'x 30, 33 (2d Cir. 2002); *Galacia v. Louisiana Citizens Prop. Ins. Corp.*, 88 So.3d 656, 661-62 (La.App.4 Cir. 2012) (holding that the trial court did not abuse its discretion in dismissing a complaint based on the plaintiff's failure to return funds received under the vacated settlement agreement. "Simple equity dictates that [the insurance company] would be prejudiced if [plaintiff] were allowed to retain the settlement funds to which he was no longer entitled and to which [insurance company] no longer had an obligation to pay.").

CIT and Sun disagree that judicial estoppel applies here. They argue that paying the settlement amounts before the Approval Order became final was not in bad faith because the terms of the Settlement Agreement allowed them to do so. They also assert that their positions are not irreconcilably inconsistent because they argued that it would be "virtually impossible" to recover settlement funds, not that it was absolutely impossible to do.

Judicial estoppel is a "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding."[74] "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts."[75] Judicial estoppel is applicable when: (i) the party to be estopped has taken two positions that are irreconcilably inconsistent, (ii) the party changed his or her position "in bad faith – i.e., with intent to play fast and loose with the court;" and (iii) judicial estoppel as a sanction is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.[76]

"Judicial estoppel is an 'extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice. It is not meant to be a technical defense for litigants seeking to derail potentially

---

[74] *EXDS, Inc. v. Ernst & Young, LLP (In re EXDS, Inc.)*, 316 B.R. 817, 824 (D. Del. 2004) (quoting *In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 229 (3d Cir. 1998)).

[75] *Id.*

[76] *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (citations omitted).

meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts.'"[77]

The Trustee's bare accusations of bad faith are not sufficient to support application of judicial estoppel in this case. There are no allegations that any court in this matter was misled by the Defendants' equitable mootness arguments. There is no alleged harm that requires such a sanction. "Because the purpose of judicial estoppel is to punish those who attempt to manipulate the court system through deception that purpose is not served by punishing those who have no such intent."[78]

Meanwhile, although the Trustee seeks to hold the Defendants to their earlier equitable mootness argument, the Trustee has taken the position in other pleadings that it is indeed possible - - and necessary - - to claw back the settlement payments. The Trustee has filed adversary complaints seeking the return of funds distributed under the Settlement Agreement pursuant to Bankruptcy Code § 549.[79]

The Defendants are not judicially estopped from arguing that the Trustee cannot assert claims under the Complaint until the Settlement Agreement is unwound. Case law supports the Defendants' position. "[L]itigants seeking to vacate settlement agreements must disgorge any monetary benefits gained as a result of the agreement."[80] "The principle that a release can be rescinded only upon

---

[77] *In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 656 (Bankr. D. Del. 2003) (quoting *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996)).

[78] *Riazuddin v. Schindler Elevator Corp. (In re Riazuddin)*, 363 B.R. 177, 189 (Bankr. D. Del. 2007).

[79] *See* Adv. No. 19-50252, *Miller v. Cheetah Software Sys., Inc.*, filed May 31, 2019; Adv. No. 19-50253, *Miller v. First Indus., L.P.*, filed May 31, 2019.

[80] *Davis v. Home Depot U.S.A., Inc.*, 2018 WL 638998, *2 (D. Conn. Jan. 31, 2018) (quoting *Nance v. NYPD*, 31 F. App'x 30, 33 (2d Cir. Mar. 13, 2002)).

a tender of any consideration received is not a peculiarity of [state] law, it is a general principle of contract law."[81]  For the reasons set forth above, the Trustee steps into the shoes of the Debtor and cannot pursue claims under the vacated Settlement Agreement unless the funds received as a result of the Settlement Agreement are returned to the Defendants.

The Court has determined that the Trustee cannot pursue the claims in the Adversary Complaint because (i) the Trustee is bound by the Debtors' waiver of those claims, and (ii) the Trustee cannot bring claims under a vacated settlement agreement until the settlement payments are returned to CIT and Sun; therefore, the remaining claims in the CIT/Sun Motions for Judgment on the Pleadings are dismissed as moot.

<u>CONCLUSION</u>

For the reasons discussed above, the Trustee's Motion to Substitute will be DENIED, and the CIT/Sun Motions for Judgment on the Pleadings will be GRANTED, in part, and DENIED, in part.[82]

---

[81] *Fleming v. U.S. Postal Service AMF O'Hare*, 27 F.3d 259, 260-61 (7th Cir. 1994) (citing Samuel Williston, 12 *Williston on Contracts* § 1460 (Walter H.E. Jaeger ed., 3d ed. 1970)).

[82] On February 22, 2021, the Court also heard oral argument in a related adversary proceeding brought by CIT, as agent for itself and the Lender Group, against the Debtors, the Trustee, and eleven other entities who received funds under the vacated Approval Order (Adv. No. 19-50526) (the "CIT Adversary"). The complaint in the CIT Adversary seeks a declaratory judgment that, among other things, CIT is entitled to recover the settlement monies paid under the vacated Approval Order and Settlement Agreement. The Trustee and Pachulski Stang Ziehl & Jones each filed motions to dismiss the CIT Adversary. As discussed in this Opinion, the case law is well established regarding the effect of vacating a settlement agreement and release.  The Court will conduct a status conference on the CIT Adversary within 30 days.

The parties shall confer and submit an appropriate Order consistent with this Opinion within 14 days of the date hereof.

FOR THE COURT:


Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:  May 5, 2021